[No. 4,057.]

IN THE MATTER OF THE ESTATE OF M. S. WEBB, DE- CEASED.

49  541<br>80  435

EXECUTORY CONTRACT TO CREATE A TRUST.—A Court of Equity will lend no assistance towards perfecting a voluntary contract for the creation of a trust, nor regard it as binding, so long as it remains executory.

ENFORCEMENT OF TRUST.—The question not decided whether the Probate Court has jurisdiction to enforce a trust created by an intestate.

IDEM.—If such contract is executed by a conveyance of the property in trust, so that nothing remains to be done by the grantor or donor to complete

the transfer of title, the relation of trustee and *cestui que trust* is deemed to be established, even if there was no consideration, and a Court of Equity will enforce the trust.

CREATION OF TRUST—If one who has had his life insured writes to his father and sisters that the insurance was made for their benefit, but makes no assignment or delivery of the policy to them, it amounts only to an executory agreement to create a trust in future, and cannot be enforced in equity.

APPEAL from the Probate Court, City and County of San Francisco.

In December, 1869, M. S. Webb obtained from the North America Life Insurance Company an endowment life policy for $4,000, payable to himself in fifteen years, or to his personal representatives, upon his earlier death. May 12, 1870, he married, and died April 15, 1872, intestate. Deceased left, surviving him, his wife in San Francisco, and his father and three sisters residing in Massachusetts. Edward G. Stetson was appointed administrator of the estate; and, on the 29th of August, 1873, as such administrator, presented a petition to the Probate Court, stating that the estate was ready for distribution, and asking that it be distributed, three fourths to the widow, and one fourth to the father. The principal part of the property in the hands of the administrator for distribution was money received by him from the company on the insurance policy. The matter came up for hearing before the Probate Court on the 15th day of September, 1873, when George W. Tyler appeared on behalf of the father and sisters, and claimed that the money in the hands of the administrator, which had been received on the life insurance policies, was not the property of the estate, and read in evidence extracts from two letters written by the deceased to his sisters. The first was written May 22, 1870, and was as follows:

"I have got an insurance on my life of four thousand, which I shall try and keep up for father and you girls, and shall have an extra amount for Dude besides." By "Dude" he meant his wife.

The second was written from Salt Lake in July, 1870, and was as follows:

\* \* "By the way, tell father I have my insurance papers in Marsh, Pillsbury & Co.'s safe for $4,000, in the North America Life Insurance Company, made out in my name, but intended for you all at home."

Mr. Tyler claimed for the father and sisters:

1.   That the letters above mentioned were an assignment of the policy to the father and sisters, and that they thus became, and thenceforth were the owners of the policy and its proceeds; or, failing that: 2. That the letters were a declaration of trust, and that decedent thenceforth held the policy in trust for them, and that the proceeds, when collected, were in trust for them.

It appeared that the deceased had, after his marriage, obtained a life policy payable to his wife for three thousand dollars, on which she had received the money after his death.   The Probate Court held that the facts that the deceased had insured his life for the benefit of his wife, and the letters, showed that the deceased did not reserve to himself any act to be performed to create a trust, and that the money received on the policies was not assets of the estate to be distributed, but belonged to the father and sisters. The wife appealed.

*Lloyd Baldwin,* for the Appellant.

The title of the father and sisters, whatever it might be, was left so imperfect and incomplete that they required the assistance of a Court of equity to perfect it.   Moreover, it was purely voluntary.   There was no consideration whatever.   It was at best but an incomplete gift, and equity never interferes to perfect the title of a volunteer.   (2 Story's Eq. Jur. Sec, 1040 c.; *Edwards* v. *Jones,* 1 Mylne & Cr. 226; *Colman* v. *Sarell,* 3 Bro. C. C. 12; *Meek* v. *Kettlewell,* 1 Hare, 475; Hill on Trustees, 85; *Antrobus* v. *Smith,* 12 Ves. 39; *Wason* v. *Colburn,* 99 Mass. 342)

In cases of voluntary transfers, until the last act is performed; until possession and control are completely relinquished; until the intention is followed up by the complete act of conveyance, there always exists the *locus penitentiæ.*

*George W. Tyler*, for the Respondent.

That the settler of a trust may make himself a trustee, is too well settled to require authorities.

That the deceased intended the policy for his father and sisters, there can be no doubt. Has he declared his intention in such form that a Court of equity will enforce it ? I answer, yes. Suppose after his death the policy of insurance had been found in the safe of Marsh, Pillsbury & Co., with these words in the body of the policy: "This policy, although made out in my name, is intended for the benefit of my father and my three sisters;" could there be any doubt but what the father and sisters could have maintained an action against the insurance company to recover on the policy? Or, if the administrator had found the policy and collected the money, that a Court of equity would have declared him a trustee in favor of the father and sisters? Or, suppose the same had been written on the margin of the policy, would it not have amounted to the same thing? If so, why does not the letter that refers to the policy accomplish the same purpose?

By the Court, CROCKETT, J.:

The claim of the father and sisters of the deceased to the fund in controversy can be sustained, if at all, on no other ground than that, by the two letters of the deceased to his sisters, he created and declared a present trust, to the effect that he held the policy of insurance in trust for his father and sisters. The transaction cannot be upheld merely as a donation *inter vivos*. There was no assignment or delivery of the policy to the father and sisters, and treated simply as a donation, it would fail for that reason. But a person intending to make a donation to another, and who clearly declares his purpose and transfers the title, need not necessarily part with the possession, provided he declares himself, in proper form, to be a trustee, holding possession for the donee. In such a case, he would thenceforth hold the property as a trustee and not in his own right. That such a trust, when properly declared, even in favor of a

volunteer, is valid, and will be enforced, is established by numerous authorities. "Where there is no valuable consideration, yet, if the settler, by a clear and explicit declaration, duly executed, and intended to be final and binding upon him, makes himself a trustee, Courts of equity will enforce the trust." (Perry on Trusts, Sec. 96.) If the trust is perfectly created, so that the donor or settler has nothing more to do, and the person seeking to enforce it has need of no further conveyances from the settler, and nothing is required of the Court but to give effect to the trust as an executed trust, it will be carried into effect, although it was without consideration, and the possession of the property was not changed. Whether the trust is perfectly created or not is a question of fact in each case, and the Court, in determining the fact, will give effect to the situation and relation of the parties, the nature and situation of the property, and the purposes or objects which the settler had in view making the disposition." (Id. secs. 98, 99.)

In such cases the point to be determined is, whether the trust has been "perfectly created ;" that is to say, whether the title has passed and the trust been declared, and the trust being executed nothing remains for the Court but to enforce it. In discussing this question the Court say, in *Stone* v. *Hackett* (12 Gray, 227): "It is certainly true that a Court of equity will lend no assistance toward perfecting a voluntary contract or agreement for the creation of a trust, nor regard it as binding so long as it remains executory. But it is equally true that if such an agreement or contract be executed by a conveyance of property in trust, so that nothing remains to be done by the grantor or donor to complete the transfer of title, the relation of trustee and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be enforced in chancery." The same proposition is announced, and the authorities fully collated and examined, in *Kederick* v. *Manning*, 1 De Gex, Mach, and Gord. 176. To the same effect are *Jones* v. *Lock*, Law Rep. 1 Chy. 25, and *Wason* v. *Colburn*, 99 Mass. 342.

We think these cases announce the correct rule, and are decisive of the present controversy. The letters from the deceased to his sisters did not purport and were not intended to be an assignment of the policy, the title to which remained in the deceased. It was not an executed trust, but at most nothing more than a voluntary executory agreement to create a trust *in futuro*, and such agreements cannot be enforced in equity. This view of the case renders it unnecessary for us. to decide whether the Probate Court had jurisdiction to enforce the trust, if it had been established.

Judgment reversed and cause remanded for a new. trial.

Mr. Justice McKinstry did not express an opinion.