[Civ. No. 1118.   Third Appellate District.—August 19, 1913]

## I. W. TABER et al., Respondents, v. C. A. BAILEY, Appellant.

TRUSTS—ACKNOWLEDGMENT BY HOLDER OF CORPORATE STOCK.—Where one signs an instrument in which he acknowledges that two others are "equally owners" with him in certain shares of mining stock standing in his name, a trust is thereby sufficiently declared. The declaration of the signer clearly expresses an intention to hold the legal title and for the two named persons to hold the beneficial interest in two-thirds of the stock described.

ID.—PAROL EVIDENCE TO SHOW PURPOSE OF TRUST.—If the purpose of the trust does not appear from the instrument, parol evidence is admissible to supply the omission.

ID.—WORDS NECESSARY TO CREATE TRUST—NO SET FORM NECESSARY.— No set form of words is necessary to create a trust; nor need the word "trust" or "trustee" be used.

ID.—DEALING WITH PROPERTY SO AS TO CREATE TRUST.—One who owns property may so deal with it, while retaining the legal title, as to make himself a trustee for the benefit of creditors.

ID.—EFFECT OF POSTPONEMENT OF BENEFICIARY'S ENJOYMENT.—It is no objection that the beneficiary's right of enjoyment is postponed, provided an immediate interest, subject to such postponement, is given.

ID.—REVOCATION OF TRUST—CONSENT OF BENEFICIARIES.—A trust cannot be revoked except by the consent of all the beneficiaries; and in this case there is no evidence in the record of any consent on the part of either of the beneficiaries to a revocation.

ID.—REPUDIATION OF TRUST—CONFLICTING EVIDENCE.—Where the evidence is conflicting as to the repudiation of a trust, the finding of the trial court thereon will not be disturbed on appeal.

ID.—CONSIDERATION FOR TRUST—NECESSITY AND SUFFICIENCY.—In a voluntary express trust without power of revocation, no consideration is necessary; but in the present case the indorsement of a note, without which the trustee could not have secured certain money, was a good and valuable consideration.

ID.—ENFORCEMENT OF TRUST—LACHES AND LIMITATIONS.—Repudiation of a trust, which will set the statute of limitations in operation against the beneficiaries, must be brought home to them. And where one holding corporate stock in trust exchanges it for stock in another corporation, laches and limitations do not run against the beneficiaries until they make a demand for a transfer and it is refused, there being no prior intimation of repudiation by the trustee.

ID.—LACHES—WHAT CONSTITUTES—PURPOSE OF DOCTRINE.—A person is guilty of laches only when he has, by his own conduct, or negligence and delay, induced or suffered another to do something, or abstain from doing something, whereby the latter might be injured, if the person guilty of such delay should be allowed to enforce his rights. The doctrine was never intended to protect the fraudulent, but to shield the innocent.

ID.—EXCHANGE OF STOCK BY TRUSTEE—FOLLOWING TRUST PROPERTY.—Where one who holds corporate stock in trust exchanges it for other stock, the rule applies that where trust property is converted and can be traced into other property the trust will attach to the latter, at least as between the trustee and the beneficiary.

ID.—NEW TRIAL—CONDITIONAL ORDER—MODIFICATION OF JUDGMENT.—An order made on motion for a new trial that, in the event of plaintiffs' filing, within twenty days, their consent that the judgment be modified by the insertion of the words "upon the payment to said defendant by said plaintiffs" of a certain sum of money, the motion for a new trial "shall be denied," otherwise the motion shall be granted, the order immediately becomes effective on the filing of the consent.

ID.—APPEAL—TIME FOR TAKING.—A notice of an appeal filed about eighty days after such order thus became effective comes too late and will be dismissed.

ID.—MODIFIED JUDGMENT—MANNER OF TAKING APPEAL.—Where the judgment is modified the appeal is properly taken from the modified judgment as entered.

APPEAL from an order of the Superior Court of Nevada County refusing a new trial. George L. Jones, Judge.

The facts are stated in the opinion of the court.

C. W. Kitts, for Appellant.

A. Everett Ball, for Respondents.

BURNETT, J.—The following facts disclosed by the evidence are sufficient for an understanding of the main points of controversy: Appellant, having obtained a bond for the purchase of certain mining property located in Nevada County and belonging to a corporation known as the Central Gold and Silver Mining Company, and desiring to purchase or having already purchased three thousand two hundred and fifty shares of the stock of that company and wishing to develop

the mine and to sell it at a profit and needing money, he came to San Francisco and obtained a loan for two thousand dollars on his note with I. W. Taber and J. J. Cook as indorsers. In consideration of such indorsement he gave to them the following instrument in writing, claimed by respondents to be a declaration of trust, and constituting the basis of this action:

"Nov. 28, 1900.

"I hereby acknowledge that I. W. Taber and J. J. Cook are equally owners with me in 3250 shares of the stock of the Central Gold and Silver Mining Co., now standing in my name, also, they are equally owners with me in a certain bond & option for purchase of the property of said Central Gold & Silver Mining Co., made to me by said Co., and dated Nov. 23, 1900.

"C. A. BAILEY."

Appellant forfeited his bond but, in connection with one Coflin, who had also obtained a bond on the property, formed a new company called the Central Consolidated Mining Co. They paid for the mine from the sale of stock of this company. Appellant exchanged the three thousand two hundred and fifty shares in the old company for shares in the new at the rate of seventy cents per share for the old and fifteen cents for the new stock. Cook in the meantime died and his widow was appointed his executrix. Before the action was brought demand upon defendant for the stock was made by plaintiffs. Appellant admitted the execution of said declaration of trust and that he now holds the stock received in exchange for the three thousand two hundred and fifty shares in the old company.

The contentions of appellant are: That said instrument was not a declaration of trust; that there was no consideration; that the action is barred by the statute of limitations; and that if a trust was created it must be deemed at an end by reason of the fact that Taber and Cook verbally agreed to pay two-thirds of the expense of the bond and two-thirds of the cost of the stock, but afterward, on demand of defendant, refused to pay anything, thereby repudiating and terminating the trust.

A careful reading of the transcript constrains us to hold that appellant's position can be maintained in no respect.

The declaration of appellant expressed as clearly as possible his intention that he should hold the legal title and Taber and Cook the beneficial interest in and to two-thirds of said stock. Section 2221 of the Civil Code provides that "subject to the provisions of section 852, a voluntary trust is created, as to the trustor and beneficiary by any words or acts of the trustor, indicating with reasonable certainty: 1. An intention on the part of the trustor to create a trust; and 2. The subject, purpose, and beneficiary of the trust."

When one expresses the intention to hold the legal title but that another should have the beneficial interest, the implication necessarily follows that the former intended to create a trust. The subject of the trust was the stock, the beneficiaries were Taber and Cook and the only controversy could be as to the purpose of the trust. A valid trust in personal property, though, may be created by parol. (Civ. Code, sec. 1052; *Hellman* v. *McWilliams,* 70 Cal. 449, [11 Pac. 659].) Parol evidence would, therefore, be admissible to supply, in the respect indicated, what was omitted from the said written declaration. The case was tried upon this theory and both plaintiff Taber and the defendant testified as to statements made by the parties at the time of said transaction. It is a fair inference, from the declarations of Mr. Taber, that he and Mr. Cook had the utmost faith in the integrity of defendant and that the legal title was left in the latter that he might vote the stock and manage and dispose of the property with greater facility and advantage.

It is well settled that no set form of words is necessary to create a trust. Nor need the word "trust" or "trustee" be used. (*Luco* v. *De Toro,* 91 Cal. 405, [18 Pac. 866, 27 Pac. 1082]; *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, [54 Pac. 370].)

In the Luco case it was said: "A voluntary express trust is created and the relation of trustee and *cestui que* trust established when the language of the instrument expresses intention that one should have the legal title and the other the beneficial interest."

In *Lynch* v. *Rooney,* 112 Cal. 279, [44 Pac. 565], the letter of Mary Rooney was held to be a declaration of trust, the only language bearing directly upon the question being: "Some time after Uncle Bryan's property was deeded to me

I heard that Uncle Patrick was still living and I resolved
that he should have one-half of the estate, though the law
does not compel the division.  Still I feel that in justice it
belongs to both of them.''  The supreme court said: ''Upon
a careful consideration of the letter, we are satisfied that an
intention upon the part of Mary Rooney to create and de-
clare a trust appears therefrom with reasonable certainty.
The subject of the trust is disclosed by the letter to be the
land.  The purpose is to acknowledge an undivided interest
therein in fee in the beneficiaries, and the beneficiaries are the
heirs of Patrick Lynch, deceased.''  The trustor made a mis-
take as to the interest the heirs were to take and the court
held that effect should be given to what was really her in-
tention.

It is equally well settled that one who owns property may
so deal with it while retaining the legal title as to make him-
self a trustee for the benefit of creditors.  (*Estate of Webb,*
49 Cal. 541.)

''It is not necessary that this be done in express terms, but
in the absence of statutory requirements any words or acts
are sufficient which clearly denote the intention to relinquish
his beneficial interest in the property *in praesenti* and to hold
it for the benefit of another.''  (*Noble* v. *Learned,* 153 Cal.
251, [94 Pac. 1050].)

It is no objection that the beneficiary's right of enjoyment
is postponed, provided that an immediate interest, subject to
such postponement, is given.  (*Nichols* v. *Emery,* 109 Cal.
323, [50 Am. St. Rep. 43, 41 Pac. 1089].)

''It is for the trial court to determine whether the words
and acts of the alleged trustor indicated with reasonable cer-
tainty an intention to create a trust and the subject, purpose
and beneficiary of the trust.''  (*Noble* v. *Learned,* 153 Cal.
251, [94 Pac. 1050].)

Without multiplying authorities, we think it should be said
that the court below properly determined that question in
favor of respondents.

As to revocation, the rule is prescribed by section 2280 of
the Civil Code as follows: ''A trust cannot be revoked by the
trustor after its acceptance, actual or presumed, by the
trustee and beneficiaries, except by the consent of all the bene-
ficiaries, unless the declaration of trust reserves a power of

revocation to the trustor, and in that case the power must be strictly pursued.''

There is no evidence in the record of any consent on the part of either of the beneficiaries to the revocation of the trust. In this connection it may be said, also, that, according to the testimony of Mr. Taber, there was no repudiation of the trust. The theory of appellant finds support, indeed, in his own testimony, but it is directly opposed to the evidence offered on behalf of respondents and, of course, we must be controlled by the latter.

As to consideration the rule is elementary that, in a voluntary express trust without power of revocation, no consideration is necessary. (Perry on Trusts, secs. 96, 98, 99; *Estate of Webb,* 49 Cal. 545; *Kopp* v. *Gunther,* 95 Cal. 63, [30 Pac. 301].) Besides, the indorsement of the note, without which appellant could not have secured the money, was a good and valuable consideration.

Upon the record it cannot be held that the action is barred by laches or by the statute of limitations. From the testimony favorable to the theory of plaintiffs we must conclude that until the demand for a transfer was made, in 1908, there was no intimation by defendant that he had repudiated the trust and plaintiffs had no reason to believe that any repudiation was contemplated or had been attempted. Repudiation, manifestly, to be of any moment, must be brought home to the beneficiaries.

''As between the trustee and the beneficiary, in case of an express trust, the statute of limitations does not begin to run until the trustee repudiates the trust in clear and unequivocal acts or words and claims from thenceforth to hold the estate as his own, not subject to any trust, and such representations are brought home to the knowledge of the *cestui que* trust.'' (*Allsopp* v. *Joshua Hendy Machine Works,* 5 Cal. App. 228, [90 Pac. 39]; *Hovey* v. *Bradbury,* 112 Cal. 620, [44 Pac. 1077]; *Odell* v. *Moss,* 130 Cal. 352, [62 Pac. 550].)

''A party cannot be guilty of laches until he has knowledge of the breach, and he is not bound to inquire, as he has a right to suppose his trustee will do his duty.'' (Perry on Trusts, 5th ed., sec. 850.)

This being a continuing trust, neither laches nor the statutory limitations could be invoked until after a demand for the

transfer of the stock.    (*Zuck* v. *Culp.* 59 Cal. 142; *White* v.
*Costigan,* 138 Cal. 564, [72 Pac. 178] ; *Dillon* v. *Cross,* 5 Cal.
App. 769, [91 Pac. 439].)

The action was brought within a year after the demand was
made and, therefore, the foregoing consideration is an answer
to appellant's contention as to the delay.

It is also a well recognized principle that ''A person is, in
equity, guilty of laches such as to preclude him from obtain-
ing relief, only, when he has, by his own conduct or negli-
gence and delay, induced or suffered another to do something
or abstain from doing something, whereby the latter might be
injured, if the person guilty of such delay should be allowed
to enforce his rights notwithstanding the negligence and delay.
The doctrine was never intended to protect the fraudulent,
but to shield the innocent.''    (*Ex-Mission L. & W. Co.* v.
*Flash,* 97 Cal. 610, [32 Pac. 600] ; *Hovey* v. *Bradbury,* 112
Cal. 352, [62 Pac. 555].)

''In determining what will constitute such unreasonable de-
lay regard will be had to circumstances which justify the
delay, to the nature of the case and the relief demanded, and
to the question whether the rights of the defendant, or any
other person, have been prejudiced by such delay.''    (*Cahill*
v. *Superior Court,* 145 Cal. 42, [78 Pac. 467] ; 19 Am. & Eng.
Ency. of Law, p. 755; *Title I. & T. Co.* v. *Ingersoll,* 158 Cal.
474, [111 Pac. 360].)

We can find no reason within the contemplation of any of
the foregoing principles that would lead us to disturb the con-
clusion of the trial court.

As to the suggested difficulty relating to the exchange of the
property, it is sufficient to say that it is an undoubted prin-
ciple of all courts of equity that where trust property is con-
verted and can be traced into other property the trust will
attach to the latter, at least as between the trustee and the
beneficiary.    (*Lathrop* v. *Bampton,* 31 Cal. 17, [89 Am. Dec.
141] ; *Elizalde* v. *Elizalde,* 137 Cal. 634, [66 Pac. 369, 70 Pac.
861].)

We deem it unnecessary to follow counsel in their argument
as to the credibility of the witnesses.    We find abundant evi-
dence, as already indicated, to support respondents' theory
of the case and we can see nothing in such evidence inherently

improbable or at all unreasonable. We can go no further in that direction.

We proceed now to notice the motion made herein to dismiss the appeal.

A motion for a new trial was submitted and, on February 19, 1912, the following order was made by the court: "In this matter, it is ordered that, in the event that plaintiffs within twenty days from this date (February 19, 1912) file in this court their consent that the judgment herein be modified by the insertion of the words following the word 'plaintiffs,' line 26, 'upon the payment to said defendant by said plaintiffs of the sum of $202.22' or words to that effect, the judgment be modified accordingly, and the motion for a new trial shall be denied; but should the plaintiffs fail to file such consent within such time, then the motion for a new trial shall be granted. Such consent shall also include the matter of insertion of a proper finding."

Two days thereafter, to wit, on February 21, plaintiffs filed their written consent in accordance with said conditional order. The effect of this was to make operative the order of the court as a denial on that day of the motion for a new trial.

In *Sherman* v. *Mitchell*, 46 Cal. 577, an order was made granting the motion for a new trial "on payment by the defendants of all costs herein up to date, and on payment of two hundred dollars, the costs for opposing this motion, that said payment be made in ten days; otherwise that defendants' motion for a new trial be denied." The payment was made within ten days and the supreme court said: "If this payment was made to the plaintiff, as stated in the acknowledgment, there can be no question that the conditions upon which the new trial was to be granted were fully satisfied, and the order granting the same became thereby operative."

In *Brown* v. *Cline*, 109 Cal. 156, [41 Pac. 862], it was held that "An order granting a new trial on condition that the moving party pay the costs of his adversary within a stated time is to be construed as an order denying a new trial upon noncompliance with the condition, and after the expiration of the time limited for complying with the condition, the court has no power to make a further order granting an unconditional new trial."

In *Holtum* v. *Greif*, 144 Cal. 524, [78 Pac. 12], it is said: "The condition is therefore an essential part of the order and the right to revoke it ceases when the power of the court over the order ceases."

In this case the order was that the motion for a new trial "*shall* be denied" in the event that plaintiffs file their consent, etc. Strictly speaking, the use of the future tense was perhaps proper, but at any rate it was a conditional order and, under the decisions, the order immediately became effective when the consent was filed.

The point is made that the court had no authority to impose the condition. As to this there would hardly seem to be any difference in principle between a condition directing the payment of a sum of money and one providing that the judgment be modified so as to direct the payment to the same party of the same sum. In *Davis* v. *Southern Pacific Co.*, 98 Cal. 13, [32 Pac. 646], it was held that the denial of a motion for a new trial in an action for damages for personal injuries, upon condition that the moving party remit part of the amount of the verdict found against him, is within the discretion of the trial court. Many cases are cited in support of the doctrine and the court says: "Moreover, this court has gone further, and has itself on appeal ordered a new trial unless respondent should file a *remittitur* of damages." This means, of course, a modification of the judgment upon condition that the designated consent be filed.

Another consideration worthy of notice is that plaintiffs, who were injuriously affected by the modification, are not complaining, while appellant, who was benefited by the modification, would seem to be in no position to complain. (*Dreyfous* v. *Adams*, 48 Cal. 131.)

The only possible question would be as to the power of the court to modify the findings in the proposed manner. It is to be observed, though, that no change was contemplated in any of the findings already made. In the answer and evidence it appeared that appellant had paid assessments on the stock held in trust and, of course, it was just that he should be reimbursed therefor. The additional finding was directed so that the modified judgment would be a logical deduction from the findings in the case.

The general rule is, no doubt, as stated in *Los Angeles* v. *Lankershim*, 100 Cal. 532, [35 Pac. 153, 556], that after the

entry of final judgment the court has no power to change the findings of fact in any material respect, but here, for reasons already stated, appellant should not be heard to raise the point. Besides, whether the court had the right to impose such condition, it does not change the fact that it did deny the motion for a new trial, and the order took effect February 21, 1912, and if erroneous it could only be corrected by appeal. The court, on March 11, 1912, made another order denying the motion for a new trial, but this was without effect, and no appeal can be had from it. (*Brown* v. *Cline,* 109 Cal. 159, [41 Pac. 862] ; *Holtum* v. *Greif,* 144 Cal. 521, [78 Pac. 11].)

The notice of appeal herein from the order denying the motion for a new trial was filed May 9, 1912. This was about eighty days after said order became effective and was too late. (*Walbridge* v. *Cousins,* 2 Cal. App. 302, [83 Pac. 462].)

There is also an attempted appeal "from the judgment and decree as amended and entered in the above-entitled action on or about March 11th, 1912." But no amended judgment was ever made by the court or entered in its records. The order made, March 11, 1912, was as follows: "In this matter the plaintiffs having filed their consent to the modification and amendment of the findings and judgment in accordance with the order of the court heretofore made, it is hereby ordered, that the motion of the defendant for a new trial be, and the same is hereby denied."

Where the judgment is modified the appeal is properly taken from the modified judgment as entered. (*Estate of Potter,* 141 Cal. 425, [75 Pac. 850].)

But as it was not actually made or entered therein the appeal was premature.

The notice also states that defendant appeals "also from the order made and entered in the above entitled action on or about March 11th, 1912, amending the findings in said cause." No such order was made, but if it had been, it would not have been appealable, but could be reviewed upon the appeal from the judgment rendered in pursuance thereof.

We have considered the cause upon the merits in view of steps that might be taken hereafter to present the record in a regular way, and we have found no prejudicial error, but for the reasons given the appeals are dismissed.

Chipman, P. J., and Hart, J., concurred.