[Civ. No. 1994. Second Appellate District.—December 28, 1916.]

HARVEY DENIS. ELLIS, Appellant, v. WILLIAM H. FUNK et al., Respondents.

TRANSFER OF PERSONAL PROPERTY—CONTEMPLATION OF DEATH—PAYMENT OF ACKNOWLEDGED INDEBTEDNESS FOR SERVICES—VALID SALE. A bill of sale of personal property made by a person over seventy-one years of age, feeble, and then suffering from the illness from which he died five days later, to his nephew, who had for a period of two years been serving him in caring for him and his property, and who was told by his uncle that he wanted to compensate him

for his labor and would give him a bill of sale of the property, constitutes a transfer for a valuable consideration, and not an attempted gift *causa mortis.*

ID.—CONVEYANCE OF REAL PROPERTY—VERBAL PROMISE OF GRANTEES—PAYMENT OF SUMS TO THIRD PARTIES—VALID TRANSFER.—A deed of real property made by a person over seventy-one years of age, feeble, and then suffering from the illness from which he died ten days later, to two of his nephews, whom he had told on several occasions that he wanted them to have the property, in reliance upon their verbal promises to comply with his wishes as to the payment of certain sums of money to third parties to whom he owed no legal obligation, constitutes a valid transfer, and not an attempted testamentary disposition of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John M. York, Judge.

The facts are stated in the opinion of the court.

Flint, Gray & Barker, Wheaton A. Gray, P. E. Greer, and Phelps, Greer, Winston & Wharton, for Appellant.

George A. Skinner, and Jones & Weller, for Respondents.

SHAW, J.—This is an appeal from a judgment entered upon the granting of defendants' motion for a nonsuit made at the close of plaintiff's evidence.

Plaintiff is an heir of one George W. Ellis, deceased, and brought this action on behalf of himself and a number of coheirs to have certain transfers of real and personal property made by Ellis to defendants, who were nephews of deceased, set aside and annulled.   Shortly after the death of George W. Ellis, defendant Funk wrote a letter to the plaintiff wherein he stated: "I will give you a statement of how Uncle George left his affairs.   He left 5 acres of land on the west slope of Signal Hill with about 200 lemon trees on it.   He left no will, but deeded his property to me and John H. Ellis of Riverside, and also gave us a bill of sale for all his personal property, and we have to settle all his indebtedness, which will be between $3,000 and $4,000.   He gave me $1,000 and the personal, which amounted to $250, for what time I was with him, and requested us to give Nana Sanders $500 and to Mabel Coulter Warren $500 and to Ewena Belshaw $200, and to Lizzie, my wife, $500; and what was left John Ellis

and me were to divide equal between us. Those are all the bequests he made." In addition to any weight or inference to be drawn from this statement, the evidence construed most strongly in favor of plaintiff, tends to prove that ten days before the death of Ellis, who was a man over seventy-one years of age, feeble, and then suffering from the illness from which he died, and being averse to having his estate administered by the probate court, he, on November 20, 1911, executed a grant deed, absolute in form, conveying to defendants all his real estate, and five days later gave to one or both of them a bill of sale to all his personal property, thus divesting himself of all worldly possessions. That these transfers were made in contemplation of the apprehended near approach of death, admits of little doubt.

As to the personal property, the character of which is not made to appear, appellant insists that the purported transfer thereof was in the nature of a gift *causa mortis*, but that as such it must fail of its purpose for the reason that there was no actual delivery of the possession of the thing given made by the donor to the donee, nor any means of getting possession and enjoyment thereof (*Knight* v. *Tripp*, 121 Cal. 674, 679, [54 Pac. 267]); and while it appears that the personal property was made the subject of a bill of sale executed by deceased to defendants, it is insisted that gifts *causa mortis* cannot be effected by formal instruments of conveyance or assignment, but "are manifested by and take their effect from delivery." (*McGrath* v. *Reynolds*, 116 Mass. 566.) Conceding appellant's contention as to the essential elements of a gift *causa mortis*, it appears that the personal property was not the subject of nor intended to be a gift. The bill of sale was not offered in evidence, and some uncertainty exists as to whether it was executed to William H. Funk alone or to him and John Harvey Ellis, his codefendant, jointly. However this may be, it does appear without contradiction that Funk had for a period of two years been serving his Uncle George in caring for him and his property, and was told by the latter that he wanted to compensate him for his labor and would give him a bill of sale of the personal property. The transfer of the personal property, consisting, as stated by Funk, of "what stuff was there; that is, the farming horses and stuff, or the horse; he only had one horse," was made for a valuable consideration, to wit, in payment of an acknowledged indebted-

ness due to defendant Funk for services rendered. Prior to this transfer, we may fairly infer from the physical condition of the vendor, that Funk, who prior to the execution of the bill of sale, had charge of his affairs, was in possession of this personal property as his agent. Thereafter and upon the delivery of the bill of sale, which was on November 25, 1911, his possession thereof was that of owner, rather than agent. This was sufficient to take the case without the provision of section 3440 of the Civil Code, under which certain transfers of personal property, unaccompanied by an immediate delivery, are deemed fraudulent. In our opinion, the evidence shows a valid sale and transfer of title absolute to the personal property involved in the litigation.

With regard to the transfer of the real estate, it appears from the meager evidence offered that the estate of the grantor's deceased wife held a one-half interest in the land, consisting of five acres upon which two hundred lemon trees were growing, so conveyed to defendants, which estate George W. Ellis, as surviving spouse, would inherit subject to the payment of certain notes which he and his deceased wife had signed, one of which was secured by mortgage upon the land. The chief evidence as to what transpired in connection with the transaction is that given by defendants. From this it appears that George W. Ellis had prior to the execution of the deed, on several occasions, said to defendants that he wanted them to have the property; that he recognized the claims against the estate therein of his deceased wife would have to be paid in order to clear the property of the lien thereof, and also recognized his liability upon other outstanding notes for small amounts; as to all of which he expressed the wish that defendants pay the same. And they told him they "would carry out his wishes—whatever he wanted done they would do." At the request of deceased, Mr. Bixby prepared the deed and he, with defendants, was present when it was executed. At this time, according to the testimony of one witness, Mrs. Belshaw, Mr. Bixby, in reply to something said by the grantor to defendants, stated: "You will have to give them a straight deed and trust to their honor to do what you want them to do." At the time of the execution of the deed no definite instructions had been given by the grantor as to what he wanted them to do, but the fair inference is that in conveying the property he relied upon their promises

to carry out and comply with the wishes he had in mind, viz., the payment of certain sums of money to third parties, which constituted the consideration for the conveyance to them. Five days after the execution of the deed, to wit, on November 25, 1911, the bill of sale was executed, and on the next day the grantor told defendant Funk, to whom he had delivered the bill of sale, that he wanted Nana Sanders, Mabel Warren Coulter, and the wife of Funk to have five hundred dollars each, and Ewena Belshaw two hundred dollars, making a total of one thousand seven hundred dollars. At the time Funk made a memorandum of what his uncle had said, and later communicated the same to his codefendant. After the death of George W. Ellis both defendants, in effect, made statements acknowledging that their uncle had conveyed the land to them in consideration of their complying with his wishes, which, as we have seen, was to pay to third parties to whom he owed no legal obligation the sum of one thousand seven hundred dollars. This promise—conceding that the promise to pay his debts was within the statute of frauds for the reason that it was not evidenced by writing—constituted a sufficient consideration for the transfer of the land to defendants by deed absolute in form. No creditor of deceased is attacking the transfer. No claim is made that the grantor was at the time mentally incompetent, or that the conveyance was obtained by fraud or duress. Neither, assuming such fact to be material, is there anything in the record indicating that defendants' promises were not to be performed until after the grantor's death. Hence the transaction cannot be construed as a testamentary disposition of the property belonging to the grantor's estate.

Appellant relies upon the case of *Knight* v. *Tripp,* 121 Cal. 674, [54 Pac. 267], and that of *Kimball* v. *Tripp,* 136 Cal. 631, [69 Pac. 428]. In those cases it appears that the property was transferred to defendant Tripp to be by him disposed of in accordance with a memorandum *only in the event of the grantor's death;* and it was there held that the transfer of the property constituted gifts *causa mortis,* but since no delivery thereof was had prior to the donor's death, they failed of their purpose. In the opinion filed in the case of *Knight* v. *Tripp,* the court, in reference to an instrument containing the donor's instructions, says: ''By this memorandum

the disposition of the property is limited to the *event of death,*
. . . It is very clear, therefore, that it was not intended by
Mrs. Cook to make a present, irrevocable gift of the property
to him (Tripp), and that she did not intend that he should
in any event have all of the property for himself.'' In our
opinion, these cases are to be distinguished from the case at
bar, since in the former no promise, as here made by defend-
ants, was made by Tripp to pay the amounts specified. More-
over, in those cases the payment was in express terms made
contingent upon the death of the grantor.

Conceding that in a judgment upon nonsuit the evidence
must be construed most strongly in favor of the plaintiff,
we are nevertheless constrained to hold, upon a more careful
consideration of the record than that given on the former
hearing, that the judgment should be affirmed, and it is so
ordered.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on February 26, 1917.