[Civ. No. 7057. Third Dist. Nov. 1, 1944.]

Estate of JOHN BELKNAP, Deceased. HARRY B. RILEY, as State Controller, etc., Appellant, v. CHARLES M. MANNON, as Executor, etc., et al., Respondents.

J. D. Lear and Raymond G. LaNoue for Appellant.

H. G. Crawford for Respondents.

THOMPSON, J.—The State Controller has appealed from an order of the Probate Court of Lake County exempting Helen Lathrop Belknap, the divorced wife of John Belknap, deceased, from payment of inheritance taxes on annuity bonds costing $20,000 to secure the payment to her of stipulated

monthly payments during the term of her life pursuant to a former property settlement agreement.

The sole question to be determined on this appeal is whether the purchase of the annuity bonds authorized by the will of said deceased in accordance with the specific terms of a property settlement agreement constitutes a *transfer of property* of the estate under section 2 of the Inheritance Tax Act of California. (Stats. 1935, p. 1266, Deering's Gen. Laws, 1937, p. 3953, Act 8495, Deering's Gen. Laws, 1941, p. 2366, Act 8495.)

The appeal is presented on a stipulation of facts and records of proceedings of the probate court and the former divorce proceeding between the spouses.

John Belknap and his wife Helen were married in 1914 and lived together as husband and wife for twenty years. They were possessed of real and personal property of a value in excess of $100,000. Dissensions arose between them resulting in a separation and a subsequent divorce which was awarded to Mrs. Belknap on the ground of extreme cruelty. The property settlement agreement was approved by the court in the divorce case and the property interests were "awarded to the respective parties hereto *pursuant to the terms of said property settlement agreement.*" The interlocutory decree was entered September 11, 1934. The agreement was attached to that decree as Exhibit "A" and made a part thereof. That agreement provides in part:

"It is the wish, desire, purpose and intention of said parties *hereby* to settle and adjust for all time all of their property rights and interests."

That instrument then specifically provides that in consideration of the settlement of all such property rights of Mrs. Belknap, her husband would pay to her $150 per month to the time of his death (which sum was subsequently increased by agreement to $200 per month), and that he would authorize his executor by the terms of his will to expend $20,000 with which to purchase for his wife "the largest monthly payment to the second party that $20,000.00 will then buy." The agreement provided in that regard that:

"Said party of the first part *does by these presents,* promise and agree by and through his Last Will and Testament *and does hereby authorize, empower, direct and command* the Executor of his said Last Will and Testament, to purchase immediately upon his appointment an annuity, payable

monthly to the second party for and during the term of her life, as follows, to-wit:

"Should said first party die . . . the largest monthly payment to the second party that $20,000.00 will then buy."

The final decree of divorce was rendered and entered May 1, 1936. No appeal was taken from either decree.

Mr. Belknap executed his will February 10, 1942, by the terms of which he bequeathed legacies of $500 to each of four other individuals, and the balance of his estate was devised to his former wife. The will declared that the testator had previously made said property settlement contract with his wife "agreeing to pay to her, monthly, the sum of Two Hundred ($200.00) Dollars *during the term of my life*," and authorized his executor to purchase annuity bonds for her benefit as above stated. Charles M. Mannon of Ukiah was nominated executor without bonds. Mr. Belknap died April 13, 1942. The will was admitted to probate and Charles M. Mannon was appointed and qualified as executor.

Upon petition filed in the estate of John Belknap, deceased, the court authorized and directed the executor to purchase the annuity bonds as provided by the terms of the property settlement agreement and the will. The will merely fulfilled the transfer of the property right provided for by the terms of the contract. The annuity bonds were thereupon purchased for the benefit of Helen Lathrop Belknap to secure payment of monthly installments according to the approved agreement and award of the divorce court. It was not a bequest by will. The inheritance tax appraiser filed his report fixing the market value of the property of the estate at $143,833.51 and included therein, among the properties belonging to the former wife, the annuity bonds as being subject to inheritance tax on the theory that the annuity bonds were bequeathed by the terms of the will. Objections to that report were filed and the issue presented thereby was tried and determined by the probate court.

In the order fixing collateral inheritance taxes, in which Helen Lathrop Belknap was exempted from the payment of inheritance taxes on said $20,000 annuity bonds, the court found and determined that, (1) the obligation to purchase the annuity bonds was created "by the said property settlement agreement . . . and not by the last will and testament of the decedent," (2) that said annuity bonds were "not trans-

ferred by the last will,'' (3) that said agreement was made for a valuable consideration and that (4) the deceased and his executor held said $20,000 in trust for the benefit of Mrs. Belknap to carry out the purpose of the property settlement agreement. Based on those findings the order in question was made, from which this appeal was perfected.

We are of the opinion the findings and order fixing inheritance taxes and exempting Mrs. Belknap from payment of such taxes on said annuity bonds are supported by the record.

Section 2 of the Inheritance Tax Act provides in part that:

''A tax shall be and is hereby imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons, . . .

''(1) When the transfer is by will . . .

''(3) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale, assignment or gift, *made without valuable and adequate consideration, . . . .*''

The annuity bonds which are involved on this appeal were not transferred by the will of John Belknap, deceased. The title to the benefit represented by those annuities vested through the specific terms of the contract which was approved and awarded by the decree of divorce. The provision of the will authorizing the executor to purchase the annuity bonds was merely the ''conduit'' (*Estate of Rath,* 10 Cal.2d 399, 408 [75 P.2d 509, 115 A.L.R. 836]), or the means by which the terms of the agreement were to be fulfilled.

The effect of the property settlement agreement was to presently transfer to Helen Lathrop Belknap, for an adequate consideration, her share of the community property belonging to the spouses as an interest in their estate, to be paid in stipulated monthly installments during her lifetime. The agreement to provide annuity bonds and to authorize the executor by will to carry out that part of the agreement was merely the means of thereby securing a continuation of the monthly payments after the death of Mr. Belknap during her lifetime. The amount of Mrs. Belknap's interest in the property was fixed by the terms of the written agreement, approved by the divorce court in the interlocutory decree and distributed accordingly. That interest was not changed by the will. That interest was not transferred by the will. It was merely transformed from a cash fund to annuity bonds

to secure the previously ascertained and agreed monthly sums. Title to those sums did not pass by the will, but by the specific terms of the property settlement agreement. The interlocutory decree provides that:

"The community property of the parties hereto be and the same is hereby awarded to the respective parties hereto *pursuant to the terms of said property settlement agreement* . . . hereto attached and marked Exhibit 'A' and is made a part hereof by reference." (Italics added.)

We conclude that the property right in and to the annuity bonds was determined by the terms of the written agreement and the interlocutory decree of divorce. In the case of *Brown* v. *Brown*, 83 Cal.App. 74 [256 P. 595], it was held that a property settlement agreement between spouses was valid and conclusive between the parties. By the terms of that agreement the wife waived and relinquished all her claims to property held by her husband "by reason of the marriage relation or by the laws of inheritance," in consideration of the husband's promise to pay to her "the further sum of $150.00 per month from the date of this agreement, . . . until the death of the party of the second part." It was declared in that agreement that, "*to secure the payment of said $150.00 per month,* the party of the first part has concurrently herewith, executed a deed of trust." · Regarding the validity of that agreement the court said:

"The agreement also contains waivers on the part of the wife, which would constitute a valid consideration.

"It is further objected that the agreement is void in that it purports to continue in full force and effect until the death of the respondent. This question, however, is decided adversely to the contention of the appellant in the case of *Higgins* v. *Higgins*, 121 Cal. 487 [66 Am.St.Rep. 57, 53 P. 1081], where it was held that an almost identical clause as the one contained in the agreement under consideration was valid. We quote the clause from the Higgins case: 'The payment of said annuity to be a binding and continuing obligation upon the said H. M. Higgins and upon his executors, administrators, and assigns, and to constitute a lien upon his estate during his lifetime, and after his death during the lifetime of the said Emily J. Higgins.' "

If the monthly payments constitute a vested interest in the property of the estate by virtue of the terms of the agreement and not a mere debt of the estate, it may not be said

that such payments amount to a "transfer of the property" subject to taxation under the Inheritance Tax Act. As the Supreme Court says in *Estate of Rath, supra,* the property interest or payments are made by the estate, pursuant to the agreement only "as a conduit of title." The actual title passed by the terms of the agreement as approved and directed by the decree of divorce, and not by the terms of the will.

In the case of *Parker* v. *Parker,* 193 Cal. 478 [225 P. 447], the court upheld such an agreement as a complete settlement of property rights of the spouses and as a valid enforceable contract. The court said:

"But here we have a provision based upon an agreement of the parties, in effect a contract. It is not an award of permanent alimony, but an award of a life annuity given in lieu of a division of the property of the spouses. It rests not upon the obligation which the law imposes upon a husband to support his wife, but upon the contract of the parties thereto. . . .

"We are convinced that the true interpretation and effect of these provisions are to create an annuity of fifty dollars per month to the wife for the period of her natural life and that, therefore, there is no merit in this appeal."

In the case of *Puckett* v. *Puckett,* 21 Cal.2d 833 [136 P. 2d 1], in which an agreement between spouses by the terms of which the wife was to be paid $250 per month until she remarried, the court said:

"The sum of $250 per month to be paid was a property settlement and not alimony. . . .

"If there is a property settlement agreement providing as a part thereof for periodical payments to be made to the wife by the husband and the agreement is approved by the court and the payments ordered by the decree to be paid pursuant to the agreement, that order will not be subsequently modified, except by the consent of the parties."

Likewise, in the case of *Estate of Mesmer,* 94 Cal.App. 97 [270 P. 732], wherein the court made an order pursuant to the terms of a previous property settlement agreement between spouses for payment to the wife of "$75.00 per month . . . during the lifetime of the said plaintiff, or until she remarries," the court held that the contract was valid and conclusive and that:

"The decedent husband, having consented to be bound by any order the court should make, his estate is bound by the order the court did make."

In the last cited case the Supreme Court incidentally held that because neither the agreement nor the will provided for the purchase of an annuity bond, the court erred in directing the executor to purchase that bond, and that the agreed payments should be made "from the general assets of the estate, *no provision therefor having been made in the will.*" In the present case both the agreement and the will provided for the purchase of the annuity bonds.

To the same effect are the cases of *Patterson* v. *Chapman*, 179 Cal. 203 [176 P. 37, 2 A.L.R. 1467], and *Bergman* v. *Ornbaun*, 33 Cal.App.2d 680 [92 P.2d 654].

█ If the instrument creates or conveys a present interest in the property, possession or enjoyment may not be postponed until death, and it is not testamentary in character. (*Calkins* v. *Equitable B. & L. Assoc.*, 126 Cal. 531 [59 P. 30]; *Cahlan* v. *Bank of Lassen Co.*, 11 Cal.App. 533 [105 P. 765]; *Ellis* v. *Funk*, 32 Cal.App. 426 [163 P. 332].)

In the case of *Chambers* v. *Lamb*, 186 Cal. 261 [199 P. 33], it was determined that:

"It is the vesting in interest of the rights passing between the parties which constitutes the transfer taxed by the act. [Citing authorities.] The death of the transferor adds nothing to the transfer if full rights have passed to the grantee prior to that time."

█ It follows that if the interest of Helen Lathrop Belknap in her right to the payment of $200 per month until she died, or to whatever monthly sum the annuity bonds provided for by the contract would purchase, vested at the time of the execution of the contract, then that instrument constituted the transfer of title, and the mere fact that the husband's will also authorized the executor to invest in annuities for the purpose of securing the continuation of the payments, would not render her interest therein subject to taxes. As the Lamb case says, "The death of the transferor adds nothing to the transfer"

█ The property settlement agreement created an irrevocable trust in favor of Helen Lathrop Belknap to pay to her the stipulated monthly sums until the time of her death. (*Taber* v. *Bailey*, 22 Cal.App. 617 [135 P. 975]; *Del Giorgio*, v. *Powers*, 27 Cal.App.2d 668 [81 P.2d 1006].) She was immediately invested with the equitable title to the property interest therein provided for.

█ In the absence of fraud or collusion, property settle-

652

ment agreements have been uniformly held to be valid and enforceable. (26 Cal.L.Rev. 707; 12 So.Cal.L. Rev. 408; 147 A.L.R. 715.) Where such agreements provide for monthly payments during the lifetime of the wife in lieu of her interest in the property, and the terms have been approved by the court and the property has been divided pursuant thereto, it has been held that the monthly payments which remain to be paid after the death of the husband do not constitute a debt against the estate. (*Miller* v. *Superior Court*, 9 Cal.2d 733, 739 [72 P.2d 868].) In the case last cited it is said in that regard:

"We are of the view that the order to pay a monthly allowance, even though in accordance with the agreement of the parties, is not a 'debt' within the meaning of the constitutional prohibition."

In support of appellant's contention in this case that the purchase of annuity bonds by the executor of the estate of said deceased for the benefit of the wife constituted a "transfer of property" subject to inheritance tax under the act, he relies chiefly on *Estate of Grogan*, 63 Cal.App. 536 [219 P. 87], in which a hearing by the Supreme Court was denied. In that case Charles and Grace Grogan were husband and wife. Irreconcilable dissensions arose between them. They entered into a property settlement contract, by the terms of which he agreed to "provide in his last will and testament for the creation of a trust fund," the income from which she would be entitled to enjoy during her lifetime, and at his death the trust should terminate and the residue of that fund would then be bequeathed to their named child if then living, and if not, then to any other person the husband might name. A decree of divorce was subsequently awarded to Grace Grogan. The decree incorporated the terms of the agreement. Mr. Grogan died and his will was admitted to probate. The report of the inheritance tax appraiser charged Mrs. Grogan with inheritance taxes on that trust fund created by the will. The court approved that report. From the order charging her with inheritance taxes on that trust fund an appeal was perfected. The appellate court affirmed the order. That case might be determinative of this appeal if it were not for the fact that it was modified by a later decision of the Supreme Court. In affirming the order imposing inheritance taxes on the trust fund thus created by will, the court said in the Grogan case, with respect to the construction of the Inheritance Tax Act:

"There is nothing in the statute which would indicate an intention on the part of the legislature that there should be any limitation on the apparently plain language contained therein, or that there should be any exception whatsoever thereto. Everything *in the nature of a change of ownership effected through a will* is apparently included. The reason for such transfer is not taken into consideration. The *result* is all that is considered; that is, the transfer itself. . . . It is not a tax on the *right* to conveyance that is usually made, but *it is a tax on the transfer by which the conveyance is consummated.* The statute here does not provide for a tax because someone has a *right* arising out of a debt or otherwise, but only when a *transfer* of property is brought about by means of a will is a tax imposed. It is a tax upon the vehicle carrying the right, rather than a tax upon the right itself. *It is in effect a declaration of law that when a will is used as a means of conveyance of property a tax must be paid for that privilege.*

"Relying upon what appears to be the great weight of authority as indicated by the cases herein cited, it must be held that the fund which passed to Mrs. Grogan through the will of Charles P. Grogan is taxable under the terms of the statute." (Italics added.)

In the later case of *Estate of Rath, supra,* the Supreme Court, by specific reference to the Grogan case, disapproves or at least limits the effect of the unqualified language of the appellate court above quoted to the effect that the Inheritance Tax Act imposes a tax on property "when a will is used as a means of conveyance," regardless of the vesting of rights by previous valid enforceable contracts or documents. The Supreme Court says:

"By virtue of the contract the husband's beneficial interest was limited to his wife. He was a trustee for his wife's nephews, for whose benefit the contract expressly was made. . . .

"A testator may devise his property absolutely to one who bears him no relationship, subject to a valid trust depending on an extrinsic agreement under which a near relative, perhaps a wife or child, has the sole beneficial enjoyment of the property. In such a case must the court in assessing the tax look only to the will? . . .

"Conversely, the testator may make an absolute bequest to a near relative, who by virtue of an extrinsic agreement may

hold subject to a valid trust for the sole benefit of a stranger to the blood of the testator. The transaction may have taken this form without an attempt to escape taxation, but if in fixing the tax the court may look only to the will, the bequest of which the stranger has the beneficial use will escape taxation in whole or in part.

"The Inheritance Tax Act contains no express provision with regard to taxation *where trusts or charges extrinsic to the will exist.* . . . *The amount of the tax is proportionate to the benefits received.* . . .

"The Inheritance Tax Act reaches transfers by instruments which are nontestamentary, as well as those which arise by will, or by intestate succession. . . . *But for purposes of fixing the inheritance tax beneficial succession is the measure.* . . . The order fixing inheritance taxes, which may incidentally determine questions in regard to succession and beneficial ownership, *is not binding* except for tax purposes as between those who claim the estate, whether as heirs, legatees, or beneficiaries of a trust extrinsic to the will. . . .

"Decisions such as *In re Grogan,* 63 Cal.App. 536 [219 P. 87], . . . do not consider the problem determined herein. *Said decisions* are to the effect that a transfer made by will is taxable although in pursuance of a contract, in payment of a debt, or for services rendered. Said decisions *had reference to a situation where the testator* [*by will*] *is disposing of his own property,* not of property held by him in trust for others, as to which his will is a mere conduit of title." (Italics added.)

To the same effect is the case of *Estate of Madison,* (Cal. App.) [148 P.2d 668], in which a hearing has been granted by the Supreme Court. The opinion in that case cites with approval the *Estate of Rath* as authority for the construction of the statute holding that the Inheritance Tax Act imposes a tax on the theory of "succession," and not merely because the will is "used as a means of conveyance." We assume the Rath case is conclusive on that point, and that the Grogan case has been modified to that extent. It follows that, in determining the validity of inheritance taxes the probate court should take into consideration documents extrinsic of the will in determining whether title to the interest in question vested by such instruments. That leads us to the conclusion that since the property settlement agreement in the present case

was clearly intended as a grant (Civ. Code, § 1053) to Mrs. Belknap, for an adequate consideration, of the interest represented by the fund from which the annuity bonds were purchased, that property was not transferred by the terms of the will, and therefore it is not subject to inheritance tax.

Of course, if the property is transferred, "without valuable and adequate consideration," by deed or otherwise in contemplation of death, it is still subject to inheritance taxes under section 2 (3) of the act. That provision has no application to the present case since it is conceded the settlement of property rights was founded on a valuable and adequate consideration.

A distinction should be drawn between the facts of this case and such cases as *In re Jones' Will*, 206 Wis. 482 [240 N.W. 186], *In re Howell's Estate*, 255 N.Y. 211 [174 N.E. 457] and *In re Gould's Estate*, 156 N.Y. 423 [51 N.E. 287], upon which the appellant relies.

In the Jones estate, *supra*, both John W. Jones and Griffith G. Jones, who were not related, owned shares of stock in a hardware corporation of which both were officers. They were "desirous of obtaining an option to purchase a portion of said stock from the other party *in the event of the death of either party*." They contracted to do so by will. There was no agreement of purchase of stock during the lifetime of either party. The option to purchase was not exercised until after the death of John W. Jones. There was clearly no transfer of title to the stock by contract and no intention of the parties that it should be so transferred. It was merely agreed that each should make a will authorizing the other to purchase from the estate of the other party the stock if desired at stipulated figures. The wills so provided. Of course the title to the stock was obtained and transferred, not by the former contract or the decree of a court, but by the terms of the will only. It was therefore clearly liable for inheritance taxes.

In the present case the property rights were actually vested by the property settlement agreement. No stock was transferred in this case. Nor was any interest in property transferred to the wife by the will. The will merely authorized the appropriation of $20,000 to be invested in annuity bonds to secure payments previously transferred by the terms of the contract.

In *In re Howell's Estate*, *supra*, the spouses executed a separation contract by the terms of which the husband agreed to

"provide by last will" that his wife "shall receive an amount equal to one third of his net income arising from his estate after the payment of all debts." The will so provided. No specific amount of property or payments were mentioned in the contract. The contract provided for no transfer of property. The division of property depended entirely upon the terms of the will. No award of property interests was made by a decree of divorce as it was in the present case. In holding that "the transfer was by will," the court said:

"Neither recognized the existence of any specific debt. Each agreed to devise or bequeath by will a proportion of his estate, provided he possessed one. *Each was free,* in the absence of fraud, to consume his entire substance in living expenses or by speculation."

In the present case the wife inherited no interest in the annuity bonds. The contract and the decree of the divorce court gave her that interest in the estate. The will merely authorized the executor to invest $20,000 in annuities to secure the former written agreement to pay her a stipulated sum per month as her share of the property.

In the Gould estate, *supra,* Jay Gould provided in his will, as payment to his son George in compensation for twelve years' services, for bequests and transfers from his estate of designated stocks and bonds in railroad and other corporations at their par value. George Gould testified that the first time he became aware of that provision of his father's will was when his father showed the will to him a week before his death, at which time he told his father it was acceptable to him. All that George Gould did was to accept the terms of the will of his father in that regard as settlement for his services. There appears to have been no former agreement between them to that effect. It was the terms of the will which provided for the transfer of stocks and bonds to which the son agreed. The reviewing court said in that regard:

"It was the purpose of the testator by this provision of the codicil to his will to discharge his debt to his son. . . . He could have refused compensation in this manner, and had he done so whatever sum he might have recovered against the estate under the agreement with his father would not have been taxable under the taxable transfer act, for there would have been in such case no transfer by will."

The New York court therefore concluded that "the title to the bonds and stocks described in the codicil was taken away

from the estate of Jay Gould and vested in George J. Gould under and by virtue of the second codicil of the will,'' and that they were therefore subject to inheritance tax. In the Gould estate there was no pretense of paying the amount of the conceded debt by transferring title to the stocks and bonds during the lifetime of Jay Gould. There was a mere agreement of the value of the services rendered, and a provision in the will to pay the debt by transferring said property from the estate. In the present case the property interests were settled by the contract and an award of the property was accordingly made by the decree of the divorce court.

While the husband in this case did agree to authorize his executor to purchase annuities at a cost of $20,000 to secure the continuation of agreed monthly payments to his wife, that promise was merely to secure the payments and the vested interest transferred by the terms of the property settlement agreement and the decree of the divorce court. The contract having been made for a valuable consideration as a complete settlement of all property rights, which rights were approved and awarded by the terms of the interlocutory decree from which no appeal was taken, it was enforceable regardless of the provision of the will. The transfer of interest in the property was therefore made by the contract before the will was executed, and the wife is entitled to exemption from inheritance taxes on the annuities.

The court specifically found that the obligation to purchase the annuities was created ''by the said property settlement agreement . . . and not by the last will and testament of the decedent.'' That finding is supported by the evidence. The fifth clause of the will recognizes that fact. It asserts that ''I have heretofore entered into two agreements with my former wife . . . agreeing to pay to her, monthly, the sum of Two Hundred ($200.00) Dollars.''

For the foregoing reasons the order is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 30, 1944, and appellant's petition for a hearing by the Supreme Court was denied December 28, 1944. Carter, J., and Traynor, J., voted for a hearing.