[S. F. No. 15257.   In Bank.—July 24, 1936.]

MARTIN P. BRUTON, Administrator, etc., Respondent, v.
CONWAY TEARLE, Appellant.

Gavin McNab, Schmulowitz, Wyman, Aikins & Brune, Milton M. Cohen, Albert A. Kidder, Jr., and .Edward E. McCullough for Appellant.

Marcel E. Cerf, Robinson & Leland, Herbert A. Leland and Henry Robinson for Respondent.

CURTIS, J.—The District Court of Appeal when this cause was before it rendered an opinion therein which in part is as follows:

"This is an appeal by defendant from an 'Order Appointing Receiver in Aid of Execution'.

"The action was originally brought by Josephine Park. Tearle to recover a judgment for unpaid alimony due her under the terms of a New York decree. She recovered judgment in excess of $9,000 and defendant appealed. During the pendency of the appeal said Josephine Park Tearle died. Her administrator was substituted and the judgment was thereafter affirmed. (*Bruton* v. *Tearle*, 117 Cal. App. 696 [4 Pac. (2d) 623].) It is unnecessary to set forth the various efforts made to obtain satisfaction of said judgment. Suffice it to state that despite all of these efforts the judgment was only partially satisfied in the sum of approximately $5,000. When defendant returned from an extended trip abroad, he was served with summons in an action brought by Josephine Park Tearle in her lifetime in Los Angeles county in which action judgment was sought for the alimony accruing under the New York decree after the period covered by the judgment in this action. It was also sought by said action to set aside certain alleged fraudulent conveyances. Thereafter a written agreement was entered into in 1932,

whereby defendant and his present wife acknowledged that defendant was indebted upon the judgment herein and for alimony subsequently accrued in a total sum in excess of $13,000. They agreed to pay said sum by the payment of 10 per cent of the earnings of either or both of them and they further agreed that, if their earnings in any semi-annual period should exceed $3,000, they would pay one-half of said earnings in excess of $3,000. There were numerous provisions in said agreement but only a few of them need be mentioned here. The defendant and his wife further agreed to procure the execution of a deed of trust by the record owner of certain real property in Los Angeles county to secure their promises. It was also agreed that as long as said parties performed all of the covenants of said agreement, the Los Angeles action would not be brought to trial and that no steps would be taken in the present action to execute the judgment herein or to institute proceedings supplemental to execution.

"Thereafter defendant Tearle engaged in theatrical work in New York and earned in excess of $24,000 up to the end of 1933. He made the payments required only for a short time after the agreement was made, said payments totalling the sum of $1,560. He ceased making payments in February, 1933. He was in default at the end of 1933 under the terms of the agreement in the sum of approximately $8,500, and no payments were forthcoming. In February, 1934, defendant made a contract with RKO Studios to appear in a picture in which he worked for 27 days at $250 per day or a total of $6,750. He started work on February 14. On February 20, pursuant to a writ of execution issued in the present action, a notice of garnishment was served upon RKO Studios in response to which the garnishee answered that it was indebted to defendant in the sum of $1,243.75. On February 23 defendant was examined in proceedings supplemental to execution and it appeared that he had made an arrangement with RKO Studios after the above-mentioned garnishment whereby he was to receive his salary each day in advance, thereby making it impossible for his earnings to be levied upon. It also appeared that defendant had withdrawn his money in the bank in order to prevent a levy thereon. While notice of garnishment had been served on RKO Studios each morning from February 20 to March 1, these services proved

futile, as there was no money due. Defendant collected the sum of $2,250 from RKO Studios during this period.

"On Feburary 28, 1934, application was made in the present action for the appointment of a receiver in aid of execution and also for a restraining order. An affidavit was filed with said application setting forth the facts and showing that execution had been returned only partially satisfied and that said defendant refused to apply his earnings to the satisfaction of said judgment. It was alleged therein that defendant, his manager and RKO Studios had entered into a conspiracy to defeat the collection of said judgment and that defendant had stated to counsel for respondent that he would not apply any of his earnings to the payment of said judgment. The trial court issued an order to show cause and a restraining order. The hearing was had on March 9, 1934, and other affidavits were filed by the parties. Testimony was taken and the transcript of the testimony on supplementary proceedings was admitted in evidence pursuant to stipulation. On said date, the trial court made an order granting injunction but continued the hearing of the application for a receiver until March 12. On the last-named date the matter was submitted and on March 16 the trial court made its 'Order Appointing Receiver in Aid of Execution', from which order this appeal was taken.

"Appellant contends 'that said court was without jurisdiction in making the orders of February 28, 1934, March 9, 1934, and March 16, 1934, and that the showing made by said plaintiff did not entitle him to any of said orders'. We find no merit in this contention. The order of February 28 was the restraining order and order to show cause. The order of March 9 was the order granting injunction. Appellant argues that the trial court was without jurisdiction to issue either the restraining order on February 28 or the order granting injunction on March 9, but we are not called upon to pass upon these questions. These orders were appealable orders (Code Civ. Proc., sec. 963; 14 Cal. Jur. 294), and no appeal was taken therefrom. The only appeal before us is the appeal from the order of March 16, which was an 'Order Appointing Receiver in Aid of Execution' and we shall therefore confine our discussion to the points raised with respect to the last-mentioned order.

■ "In our opinion the trial court had jurisdiction to make the order of March 16 appointing a receiver. Section 564, subdivision 4, of the Code of Civil Procedure provides that a receiver may be appointed, 'After judgment . . . in proceedings in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment.' (See, also, *Habenicht* v. *Lissak*, 78 Cal. 351 [20 Pac. 874, 12 Am. St. Rep. 63, 5 L. R. A. 713] ; *Pacific Bank* v. *Robinson*, 57 Cal. 520; 11 Cal. Jur. 155, 156.) Appellant cites numerous authorities but we find none of them in point. This was not an attempt to bring an independent action in the nature of a creditor's bill, but respondent here proceeded strictly in accordance with the statutory provisions for proceedings supplemental to execution. That the trial court had jurisdiction to appoint a receiver in such proceedings is clearly indicated in one of the authorities cited and relied upon by appellant. (*McCutcheon* v. *Superior Court*, 134 Cal. App. 5 [24 Pac. (2d) 911].) We further believe it clear from a reading of the code section above quoted and the recital of the facts above set forth, that the showing made by respondent was sufficient to justify the making of the order in question.

■ "Appellant further contends that he was denied the opportunity to be heard on his claim of exemption of the money to be collected by the receiver. This contention is without merit as to the earnings which had become due to appellant up to the time of the making of the order appointing the receiver. Appellant's claim of exemption was made an issue before the trial court and appellant had a full opportunity to be heard thereon. There was ample evidence that the earnings affected by the order . . . were not necessary for the support of appellant's family and the trial court properly concluded that said earnings were not exempt. (Code Civ. Proc., sec. 690, subd. 10.)

"The further claim is made that the trial court erred in ordering the receiver to collect so-called future earnings as well as those already earned. In this connection, appellant contends that the receiver should not have been authorized to collect any salary earned after the issuance of the order to show cause on February 28 and particularly should not have been authorized to collect any salary which had not

been earned at the time of the appointment of the receiver on March 16. In support of his contention he cites certain authorities which hold that a garnishment does not serve to impound 'future earnings'. We are here concerned, however, not with the question of what may be reached by garnishment, but what may be reached by proceedings supplemental to execution. Appellant also cites certain authorities from other jurisdictions, most of which deal with exempt earnings, and in some of which it is indicated that no salary earned or other property acquired after the issuance of the order of examination or order to show cause may be reached in such supplementary proceedings. We believe that the rule indicated by such authorities is not based upon sound reason in the light of the obvious purpose of the statutory provisions for proceedings supplemental to execution. ▋ If the judgment debtor acquires nonexempt property of any kind between the time of the issuance of the order of examination or order to show cause and the time of the hearing thereof, we know of no reason why such property should not be held to be reachable in the proceedings then pending. We therefore conclude that the trial court did not err in ordering the receiver to collect the money representing the salary of the judgment debtor earned up to the time of the appointment of the receiver on March 16, which money had been found by the court to be not exempt from execution.''

We are in accord with the foregoing statement of facts and the discussion of the legal questions therein involved, and we approve and adopt the same as a part of our opinion herein.

The receiver, however, was further directed to collect and forthwith pay over to respondent all earnings ''to become due'' to appellant not only under his agreement with the RKO Studios, but also from all other persons who should thereafter have in their possession or under their control any moneys or earnings of the appellant. This order was to continue and be in force until the judgment against appellant together with costs and accruing costs was satisfied. Appellant contends that the court in ordering the receiver to collect and pay over to respondent the future earnings of the appellant exceeded its powers in that respect.

Whether said order in its entirety can be sustained depends in a large measure upon the nature of the judgment rendered

against appellant in the Superior Court of the County of San Francisco. As stated above, the respondent recovered against appellant in the courts of New York a judgment which, among other things, awarded her alimony payable in monthly instalments. In the action brought in this state on said judgment, respondent did not ask to have the New York judgment established as a foreign judgment, but she simply asked and was awarded by the courts in this state what appeared to be merely a money judgment.

Appellant contends that this change in the form of the judgment destroyed it as an alimony judgment and converted it into an ordinary money judgment. In support of this claim reliance is placed upon *Creager* v. *Superior Court*, 126 Cal. App. 280 [14 Pac. (2d) 552], and *In re Williams' Estate*, 118 N. Y. Supp. 562. While there is language in the case of *Creager* v. *Superior Court, supra*, which would justify appellant's claim that the California judgment is in fact as well as in form only an ordinary money judgment, yet a reading of the opinion in that case clearly shows that such language was not necessary to the decision of any issue present in that case. The judgment which the court there had under review was admittedly a judgment for alimony, having been rendered in this state in a proceeding to establish, as a foreign judgment, the original judgment rendered in Nevada, and was a judgment for alimony. The case of *In re Williams' Estate, supra*, also relied upon in support of the appellant's contention was reversed by the Supreme Court of New York (152 App. Div. 385 [136 N. Y. Supp. 707]) and the reversal was affirmed by the New York Court of Appeals. (208 N. Y. 32 [101 N. E. 853, 46 L. R. A. (N. S.) 719].) In that case the question before the court was whether a certain judgment rendered in a divorce action had been discharged by the bankruptcy proceedings of the judgment debtor. The divorce action had been instituted in the state of South Dakota, and resulted in a judgment against the husband in which he was required to pay his wife alimony. Thereafter the wife brought an action in the courts of New York upon said judgment against her husband. This action resulted in a judgment in the wife's favor, which in form was a simple money judgment, and was similar to the judgment in the instant action. The two appellate courts of New York, however, held that such a judg-

ment was in fact a judgment for alimony and accordingly was not discharged by the bankruptcy proceedings. In its decision the New York Court of Appeals, on page 39 of its opinion, uses this very apt language: "In this proceeding now before us . . . the facts were before the court, and looking beneath the judgment it appears that the foundation upon which the respondent's claim rests is the alimony decree by the South Dakota court to be paid by the testator [the husband] to the respondent [the wife]. The alimony was due in the form of a judgment entered in the legal method of enforcing the testator's obligation. Even if we give to the appellant's argument all the force and effect that he claims for it, the judgment rendered in South Dakota was not discharged by the decree in bankruptcy. . . . A decree in bankruptcy proceedings should not be held to be a discharge of a judgment in one state unless it at the same time is held to be a discharge of any and all judgments of other states, which are founded primarily upon the same debt or duty and which have such relation to each other that a payment of one would result in a defense to or extinguishment of the others." If we apply the rule announced in that case to the instant action, and we look beneath the judgment rendered by the California court, we find upon the inspection of the judgment roll herein that the California judgment is based upon a judgment for alimony rendered in the courts of New York and, therefore, although it is in form merely a money judgment, it is in fact an alimony judgment and partakes of all the characteristics and possesses all of the attributes of a judgment for alimony. It is, therefore, enforceable by execution, by contempt proceedings, or by proceedings supplemental to execution. The case of *In re Williams' Estate, supra,* as finally decided by the courts of appeal of the state of New York is, therefore, not only not an authority in support of appellant's position but does expressly and directly support respondent's position that the California judgment rendered in the case of *Bruton* v. *Tearle, supra,* was in fact an alimony judgment and was therefore enforceable to the same extent and by the same legal methods which are applicable to a judgment originally rendered in this state and which makes provision for alimony payments.

We have in the previous portions of this opinion held that the appointment of a receiver under proceedings supple-

mental to execution was proper and that it was within the power of the trial court to direct said receiver to collect the money representing the salary of the judgment debtor earned by him up to the time of the appointment of said receiver. Is there any legal reason why a different rule should govern when the future salary of the defendant, earned after the appointment of the receiver, is made the subject of such an order?

We have shown that the judgment against defendant is a judgment for alimony. One of the characteristics of such a judgment is that as against said judgment the judgment debtor's earnings are not exempt from execution. (*Willen* v. *Willen,* 121 Cal. App. 351, 354 [8 Pac. (2d) 942]; *Winter* v. *Winter,* 95 Neb. 335 [145 N. W. 709, 50 L. R. A. (N. S.) 697]; *Fanchier* v. *Gammill,* 148 Miss. 723, 738 [114 So. 813]; *Anderson* v. *Norvell-Shapleigh Hardware Co.,* 134 Mo. App. 188 [113 S. W. 733]; 2 Schouler, Marriage, Divorce, Separation and Domestic Relations, 6th ed., pp. 1939, 1940.) Not only are the earnings of the judgment debtor under an alimony judgment liable for the payment thereof, but the means of enforcement of such a judgment are different and more effective than those applicable to the enforcement of an ordinary money judgment. One of such means frequently resorted to by the courts for the enforcement of an alimony judgment, which is not applicable to other judgments, is by proceeding in contempt upon the failure of the judgment debtor to comply with the decree. In the case of *Fanchier* v. *Gammill, supra,* the court points out the difference between an ordinary judgment for money or property and a judgment for alimony, and the reasons why more effective means may be resorted to by the courts in the enforcement of the latter class of judgments. In that case the court said: ''A judgment or decree for alimony carries with it a special power and right of enforcement not given in judgments at law. There is a difference between a judgment for money or property and that of a decree for alimony; and the decree for alimony, because of such difference in the character of the obligation, may be enforced by more efficient and effective means than those given to the enforcement of judgments at law.''

In *Audubon* v. *Shufeldt,* 181 U. S. 575 [21 Sup. Ct. 735, 45 L. Ed. 1009], the court defines permanent alimony in the

following terms: "Permanent alimony is regarded rather as a portion of the husband's estate to which the wife is equitably entitled, than as strictly a debt; alimony from time to time may be regarded as a portion of his current income or earnings." The word "current" as applied to earnings or wages means earnings that are paid periodically or from time to time as the work is performed. (*J. M. Radford Grocery Co.* v. *McKean,* (Tex. Civ. App.) 41 S. W. (2d) 639, 640; *First National Bank of Cleburne* v. *Graham,* (Tex. App.) 22 S. W. 1101, 1102.) In the last stated case the court defined the term "current wages" as "such compensation as in fact is paid for services rendered by the hour, day, week, month or year". This definition of the term "current" brings the income of appellant within the above definition of alimony given by the court in the case just cited.

If permanent alimony be regarded as a part of the husband's estate and as a portion of his current income and earnings, then the wife under her alimony judgment has an interest in the husband's earnings both those which have accrued and those which will fall due in the future. In such a case there can be no legal objection to an order of court appointing a receiver for the purpose of securing to the wife her interest in those earnings. To deny her that right would permit the husband, as he has done in the present case, to receive his salary or other income in full and make away with it before the wife by any legal process could claim any portion of it. By the proceeding resorted to in the instant case the court simply intercepts the husband's income before it reaches him and devotes it to the purposes to which the law has subjected it. Unless the court has the power to make and execute such an order, the interest of the wife in her husband's estate would be in many instances, as it would be in the present case, absolutely lost and defeated.

But appellant complains that the order of the court in the instant case directed the receiver to seize all of the appellant's future earnings and salary and thus left him without any means of support or resources whereby he might be able to earn an income in the future. In granting the order which was made in this case, the trial court could no doubt have provided that a sum sufficient to meet the personal needs of the appellant be excepted from the amount to be paid the respondent. In all probability had such a request

or application been made by appellant, the court would have granted the same. But no such application was made by appellant. He contended that all of his salary and earnings were exempt from execution, and that none of it, and especially that earned by him in the future, could be applied to the payment of his wife's claim for alimony. He stood on this contention and made no objection to the order of the court that it left him without means for his support. Had such an application been made and denied, then it would have been our duty to rule upon the question as to whether the trial court abused its discretion in denying the application. But that question is not before us in the present proceeding. The trial courts have large discretionary powers in matters relating to alimony. They may decrease or increase the amount originally ordered to be paid, or they may direct under a proper state of facts its discontinuance altogether. Undoubtedly the trial court, before which this proceeding is pending, still has the power, in the event the appellant should make application therefor, to make an order directing the receiver to pay to appellant an amount sufficient to meet his personal needs during the time the order under review is in force. This order, however, if made at all, should be made in the trial court rather than here, and upon a proper application and showing by the appellant that a certain portion of his earnings is necessary for his personal support. There are no facts before this court which would enable us to properly make such an order, or to modify the present order in that respect. It follows from the above discussion that the order of the trial court and particuarly that portion thereof which directs the receiver to collect and pay over to respondent the future earnings of the appellant is a valid and binding order of court.

A further contention was made by appellant which in our opinion was successfully and adequately answered by the District Court of Appeal as follows:

■ "Lastly, appellant apparently contends that the judgment could not be enforced against him until the security furnished pursuant to the agreement of 1932 by way of a deed of trust had been exhausted. He cites and relies upon *Bank of Italy etc. Assn.* v. *Bentley*, 217 Cal. 644 [20 Pac. (2d) 940]. In our opinion, this contention is without merit. The agreement made in 1932 was clearly an agreement of

forbearance and the judgment was not merged therein. The deed of trust was not given to secure the judgment as such, but was given to secure the promises made by appellant and his wife in said agreement. By the terms of the agreement, the promise to refrain from enforcing the judgment was to be binding only 'as long as the said Tearles shall perform all of the covenants herein provided to be performed by them'. Upon their failure to keep their promises made in said agreement, we believe that respondent was entitled to proceed with the enforcement of the judgment and that the rule set forth in *Bank of Italy* v. *Bentley, supra,* has no application to the facts before us.''

This portion of the opinion of the District Court of Appeal we also adopt as a part of our opinion in this proceeding.

The order appealed from is affirmed.

Shenk, J., Thompson, J., Waste, C. J., Langdon, J., and Seawell, J., concurred.