[Civ. No. 21481. Second Dist., Div. Two. Oct. 2, 1956.]

MARIE LUBIN, Appellant, v. MOLLIE LUBIN, as Executrix, etc., Respondent.

Meyer Berkowitz for Appellant.

Gold & Needleman and Harry M. Fain for Respondent.

ASHBURN, J.—This case presents the problem of method and effect of incorporating a property settlement agreement into a divorce decree, also that of accrual of a cause of action upon an agreement to maintain insurance to provide support for the wife from and after the husband's death, and other related matters, such as abandonment and rescission of the agreement. Plaintiff wife appeals from a judgment denying her any relief.

Herbert Lubin and plaintiff Marie were married on June 29, 1924, lived together until May 6, 1930, when he deserted her and took their two boys, aged 5 and 2 years, with him to Europe. There the three remained until after the making of a property settlement agreement on April 11, 1932. The

primary question in this case is whether that agreement was effectually incorporated into the divorce decree which the wife obtained in Chicago on May 6, 1932. The trial court held that it was incorporated and merged into the decree but that the obligation to provide insurance, therein expressed, disappeared in the process.

The agreement, negotiated and drawn by the attorneys for the respective parties while Herbert and the boys were still in Europe, was carefully designed to avoid the making of any promises which would become effective unless or until same were embodied in a decree of divorce entered in an action to be filed by Marie in Chicago.[1] Section "Second" of the document provides: "In the event that the Court shall determine that said Marie is entitled to a decree in said suit, said Herbert hereby consents to the entry of a decree therein and authorizes his said solicitors to consent to the entry of such a decree, *provided such decree embodies the provisions with respect to the custody of the children of said Herbert and Marie and the property settlement hereinafter contained.*" (Emphasis added.) Each promissory paragraph is preceded by this language or its substantial equivalent: "The parties hereto hereby agree that if the court shall determine that said Marie is entitled to a decree in said action, said decree shall provide" (quoting section "Third"). That portion of the contract covers the matter of custody of the boys in the father, visitation by the mother, place of their residence and like matters. Section "Fourth" contains this: "The parties hereto hereby agree that if the Circuit Court of Cook County shall determine that said Marie is entitled to a decree in said action, said decree shall provide: (a) That Herbert Lubin will immediately provide and (subject to the provisions hereinafter contained) will maintain and pay the premiums on insurance policies upon his life, having an aggregate face value of One Hundred Fifty Thousand Dollars ($150,000.00). Such policies shall provide for the payment, after the death of said Herbert Lubin, to said Marie Lubin during her lifetime of eight hundred thirty-three dollars and thirty-three cents ($833.33) per month (including income and principal) for as long a period of her lifetime as can be arranged thereunder,

---

[1]Marie then had a divorce action pending in Los Angeles. No claim is made that this agreement is contrary to public policy and the circumstances indicate that it was not. (*Hill* v. *Hill*, 23 Cal.2d 82 [142 P.2d 417]; *Shankland* v. *Shankland*, 301 Ill. 524 [134 N.E. 67, 69]; *Kohler* v. *Kohler*, 316 Ill. 33 [146 N.E. 476, 477].) The Illinois court found that the agreement "is a fair, equitable and reasonable contract."

both of the parties agreeing to co-operate in the execution of any instruments necessary to effectuate such form of settlement. Such policies shall provide that any unexpended portion thereof, upon the death of Marie Lubin, shall be paid to the Chicago Title and Trust Company, as Trustee under Trust No. 18686 (the present trust). In the event of the death of Marie Lubin prior to the death of Herbert Lubin, said policies shall provide that said Herbert Lubin may designate as new beneficiary thereunder, either the said Trustee under Trust Number 18686 and/or the said children; subject, however, to the right of the said Herbert Lubin to reduce the amount of the said life insurance as provided for in subparagraph (c) of this Paragraph Fourth.'' Subparagraphs (b) and (c) thereof provide that Herbert shall pay into a trust a specified percentage of his ''unexpended annual income'' (computed according to a specified formula), until $200,000 shall have been placed therein, whereupon he shall have the right to withdraw all life insurance mentioned in subparagraph (a) and have full control and ownership of the same. This latter procedure was never pursued and does not enter into the controversy before us.

Prior to the making of this agreement, in June 1927, Marie had created a trust with Chicago Title and Trust Company of Chicago, Illinois, placing therein property worth $1,750,000 which apparently yielded her an income of $10,000 a year, during her lifetime only. For this reason no provision was made in the property settlement agreement for any alimony, and the insurance provision was made in order to afford her support after the husband's death, but not before. Section ''Fifth'' says: ''It is further agreed by and between the parties hereto and said decree shall provide, that *in consideration of the provisions for the support of said Marie herein contained and to be embodied in said decree,* said Marie shall release and relinquish all other rights in and to the property of said Herbert now owned or hereafter acquired by him, including all right of dower, homestead or other statutory rights, and in consideration of such release by said Marie, said Herbert shall likewise release all rights in and to the property of said Marie now owned or hereafter acquired by her, including all right of dower, homestead or other statutory rights. . . .'' (Emphasis added.) Herbert also agrees in another section to pay court costs and wife's attorney fees. Marie agrees to dismiss her California divorce proceeding upon

Herbert's appearance in the Illinois case, and Herbert agrees to return to the United States with the children upon entry of an Illinois divorce decree.

The divorce case came on for hearing on May 6, 1932, Herbert having appeared and filed an answer. The court found plaintiff Marie entitled to a divorce and granted same. The decree sets forth at length the provisions of the agreement concerning custody, visitation, etc., of the children. There is no specific mention of the insurance phase of the agreement, but the decree does say: "The Court further finds that in and by said contract, the parties hereto have heretofore agreed upon a property settlement which is embodied therein; . . . and the Court further finds that said contract has been fairly entered into and is a fair, equitable and reasonable contract; and the Court hereby approves and confirms said contract *and all of the terms,* covenants and conditions thereof, *and makes said contract, by reference a part of this decree."* (Emphasis added.) Also, it adjudges "that all the right, title and interest of the complainant Marie Lubin of every kind, character and description in and to the property or estate of the defendant Herbert Lubin, including the right of alimony, dower and other statutory rights, *except as established in said contract,* is hereby released, discharged and forever barred." (Emphasis added.)

The question of whether the insurance provisions of the agreement were thus incorporated into the decree and a merger thereby effectuated is one of Illinois law (50 C.J.S. § 890, p. 491), but counsel have made no claim that the pertinent laws of that state differ from ours, there was no such discussion in the trial court, our own research has disclosed no substantial differences, and we therefore proceed upon the presumption that the laws of Illinois are the same as those of California in all respects pertinent to this discussion. (*Mercantile Acceptance Co.* v. *Frank,* 203 Cal. 483, 490 [265 P. 190, 57 A.L.R. 696].)

Most of the confusion surrounding the question of incorporation and merger of property settlement agreements in this state has been dissipated by the opinion in *Flynn* v. *Flynn,* 42 Cal.2d 55 [265 P.2d 865]. The matter arose upon an application for reduction in monthly payments of alimony provided in a property settlement agreement. The motion was denied by the trial court because the agreement was incorporated by reference only. The principal question on appeal

was whether an incorporation by reference could and did effect a merger. Merger is defined at page 58 as "the substitution of rights and duties under the judgment or the decree for those under the agreement or cause of action sued upon." The court then said: "The question as to what extent, if any, a merger has occurred, when a separation agreement has been presented to the court in a divorce action, arises in various situations. Thus, it may be necessary to determine whether or not contempt will lie to enforce the agreement, whether or not other judgment remedies, such as execution or a suit on the judgment, are available, whether or not an action may still be maintained on the agreement itself, and whether or not there is an order of the court that may be modified under the provisions of section 139 of the Civil Code. In any of these situations it is first necessary to determine whether the parties and the court intended a merger." Also: "Whether or not a merger is intended, the agreement may be incorporated into the decree either expressly or by reference. . . . If a merger is intended, the purpose of incorporation is, of course, to make the agreement an operative part of the decree." At page 59: "It is settled that a document may be incorporated either expressly or by apt reference into a judgment or decree so as to make it an operative part of the order of the court. [Citing cases.] Plaintiff contends, however, that a document may not effectively be incorporated by reference unless it is part of the permanent records of the court. She points out that since in this case the agreement was merely introduced in evidence as an exhibit, it could be withdrawn or destroyed, and that therefore interested parties could not by searching the records of the court 'construct a complete picture of the rights and obligations of the parties.' (See *Price* v. *Price,* 85 Cal.App.2d 732, 735 [194 P.2d 101].) These considerations may justify modifying the interlocutory decree on appeal to require that the agreement be attached to the decree. We do not believe, however, that they are sufficient to require us to hold that the decree, now final, is insufficient to effect its clearly stated intent." At page 60: "Thus in this case, the decree may be given its intended effect by referring to an adequately identified document, and the fact that the document is not a part of the permanent records of the court does not vitiate the decree. [Citing cases.] *Price* v. *Price,* 85 Cal. App.2d 732 [194 P.2d 101], *is contrary to the foregoing authorities and is disapproved."* (Emphasis added.)

788

Bearing in mind that intention is the primary criterion[2] of merger it plainly appears in this instance that the contracting parties had no other intent, for the effectiveness of the entire agreement was conditioned upon its being embodied in the divorce decree. (Section "Second" quoted, *supra*.) No question is raised as to the efficacy of the decree to merge the obligations concerning the children because they are set forth at length in substantially the same language as the agreement. But it is argued that the result was different in respect to the insurance obligation because that portion of the agreement was incorporated by reference only. With respect thereto section "Fourth" of the agreement opens as follows: "The parties hereto hereby agree that if the Circuit Court of Cook County shall determine that said Marie is entitled to a decree in said action, said decree shall provide. . . ." The decree specifically declares that the property settlement "is embodied therein" (i.e. the parties' contract), and "the court hereby approves and confirms said contract *and all of the terms,* covenants and conditions thereof, *and makes said contract, by reference a part of this decree."* (Emphasis added.) The Flynn case leaves no room for doubt that the entire agreement was embodied or incorporated into the decree, part by reference and part by repetition. ██ But counsel for respondent make the argument that although the entire agreement was incorporated by reference and merged into the judgment, the obligation of the insurance provision somehow disappeared because not set forth in *haec verba* and not specifically made the subject of an order to perform. With this line of reasoning we cannot agree. It well may be that that type of incorporation is a necessary basis for enforcement by contempt proceeding (*Lazar* v. *Superior Court,* 16 Cal.2d 617, 620 [107 P.2d 249]; *Plummer* v. *Superior Court,* 20 Cal.2d 158, 163 [124 P.2d 5]), but for other purposes incorporation by reference is enough to make the agreement a part of the judgment with the same effect as if written at large therein.

██ The unmistakable effect of the ruling in the Flynn case is that incorporation by reference is sufficient to merge the settlement agreement into the divorce judgment and to sustain an action upon the judgment with respect thereto.

---

[2]There being no oral evidence on the subject the question is one of interpretation of written instruments,—a question of law upon which the trial court's finding is not binding here. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Clark* v. *Tide Water Associated Oil Co.,* 98 Cal.App.2d 488, 490 [220 P.2d 628].)

■ In the instant case plaintiff sues for a money judgment based upon breach of the terms of the agreement or the decree; counsel for plaintiff declined to make an election between the two. To hold that the entire agreement has been incorporated in the decree but that failure to expressly order performance of the insurance provision prevents any recovery for breach of same (which, in effect, is the holding below), would work a regrettably unfair result so far as plaintiff is concerned. The agreement makes incorporation of its provisions a condition precedent to the existence or enforcement of any of the husband's promises; says that the decree shall provide that he will immediately provide and maintain and pay the premiums on insurance policies for the benefit of Marie; that she will release all dower and other rights in the husband's property "in consideration of the provisions for the support of said Marie herein contained and to be embodied in said decree." The court's decree declares that all the terms, covenants and conditions of the contract, and the contract as a whole, are made "by reference a part of this decree;" also that the rights of Marie to any property or estate of Herbert, "including the right of alimony, dower and other statutory rights," are "hereby released, discharged and forever barred," "except as established in said contract." If there is expressed in the decree no enforcible agreement to provide insurance for Marie the consideration for the release of her right to alimony, dower, etc., fails because she has no remedy on the contract or on the decree; that being the case, she goes out of the divorce court empty handed and the major purpose of both parties has been frustrated, namely, that the decree should embody the provisions concerning the custody of the children "and the property settlement hereinafter contained."

We hold that the provisions of section "Fourth" of the agreement were incorporated in the decree by reference, that that was an effective method of its embodiment, that the promises therein contained became effective immediately upon such incorporation and that a right of action thereon accrued to plaintiff upon breach of same. This brings us to the second major question, the statute of limitations.

■ It is hornbook law that the statute of limitation begins to run in any case upon the accrual of a cause of action, which means a present right to sue thereon. (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062].) ■ The cause of action upon a con-

tract which is to be performed upon the death of the promissor does not accrue until that event occurs. *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 P. 728], is in point. That was an action upon an agreement to receive plaintiff into the family of William H. Rogers and wife, raise him as their own child, and further providing that ''he should heir and share equally'' with their own daughter. The husband was the surviving spouse and he died after having disposed of his property contrary to the said agreement. In response to plaintiff's suit the statute of limitation was interposed. The promise had been made in 1851 and Rogers died in 1906, the action being commenced seasonably thereafter. The court said, in part: ''While the matter is not entirely free from doubt, we are of the opinion that the district court of appeal was correct in its conclusion that the action was not barred as to the land by any provision of our statute of limitations.'' (P. 47.) ''What James Taylor Rogers was entitled to, in the event that he survived William H. Rogers, was one-half of all the property that William H. Rogers might leave. In view of the construction given by the trial court to the agreement, which we consider warranted, we are of the opinion that in determining what property was so left, the court properly included the land given to Mrs. Carter and Mrs. Schlotterback by the deed of gift. But James Taylor Rogers had no enforceable right under his contract in regard to such land or any other property prior to the death of William H. Rogers. Whatever rights he had under the contract, in so far as 'heiring and sharing' in the property are concerned, accrued only on the death of William H. Rogers, and only in regard to such property as may properly be held to come within the scope of the contract, i.e., property left by William H. Rogers.'' (P. 48.) ''His right to maintain any action to enforce the contract accrued only upon the death of William H. Rogers.'' (P. 49.) To the same effect are *Furman* v. *Craine*, 18 Cal.App. 41, 47 [121 P. 1007]; *Mayborne* v. *Citizens T. & S. Bank*, 46 Cal.App. 178, 189 [188 P. 1034]; *Chilwell* v. *Chilwell*, 40 Cal.App.2d 550 [105 P.2d 122]. See also as to accrual of cause of action upon a continuing contract, *Ross* v. *Tabor*, 53 Cal.App. 605, 613 [200 P. 971]; *Miller* v. *Bean*, 87 Cal.App.2d 186, 189-190 [196 P.2d 596]; *Gaskins* v. *Security-First Nat. Bank*, 30 Cal.App.2d 409, 416 [86 P.2d 681]; *Leoni* v. *Delany*, 83 Cal.App.2d 303, 307 [188 P.2d 765, 189 P.2d 517]; *Fancher* v. *Brunger*, 94 Cal.App.2d 727, 731 [211 P.2d 633].

In those cases where a continuing contract involves the rendering of benefits to the plaintiff before the date for final performance the rule is as stated in 16 California Jurisprudence, section 110, page 511: "In the case of a continuing executory contract, if the parties do not mutually abandon and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the expiration of the time designated in the contract before commencing his action." The text is supported by such cases as these: *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 746 [47 P.2d 273]; *Richter* v. *Union Land etc. Co.*, 129 Cal. 367, 375 [62 P. 39]; *Tahoe Pines Co.* v. *Newman*, 59 Cal.App. 186, 190 [210 P. 445]. In the Union Sugar case, *supra,* it is said at page 746: "Respondent was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until it had made its election." In the instant case there was no occasion or opportunity for an election because plaintiff was entitled to nothing during Herbert's lifetime. She acted promptly after his death, filed a claim against his estate, it was rejected and she sued within less than a year after his death.

Counsel for respondent urges that plaintiff learned in 1933 that Herbert had defaulted in payment of premiums and that the insurance policies had lapsed, that she thereupon could and should have pursued one of several remedies, hence that the statute then started to run. This, of course, ignores the right of election which she would have had if there had been anything owing to her during Herbert's lifetime. It also proves unavailing for additional reasons. The suggested remedies are specific performance, amendment of divorce decree and proceeding in contempt.

As to specific performance, it appears that shortly after the decree was entered Herbert did turn over to plaintiff policies aggregating $150,000, as agreed. Thenceforth his obligation was to pay premiums and otherwise maintain in force the said policies for Marie's benefit. This involved a series of acts extending over the balance of his life; he continued to live for 20 years more. "The rule is settled that contracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction are not enforceable in equity." (*Moklofsky* v. *Moklofsky,* 79 Cal.App.2d 259, 262 [179 P.2d 628].) To the

same effect see *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158, 171 [88 P.2d 698, 89 P.2d 386]; *Whipple Rd. Quarry Co.* v. *L. C. Smith Co.*, 114 Cal.App.2d 214, 216 [249 P.2d 854]; *Bessemer Coal, Iron & Land Co.* v. *Bullard*, 215 Ala. 433 [111 So. 5, 6]; 23 Cal.Jur., § 43, pp. 479, 480.

Amendment of the decree would not be an available remedy, for it needed no amendment. As above shown, a setting forth of the insurance obligations in *haec verba* would have added nothing to the decree, nor accelerated the necessity of suit thereon. Moreover, it does not appear that any basis for amendment, such as mistake, existed. ■ As drawn, the decree would not sustain a contempt proceeding. (*Lazar* v. *Superior Court, supra,* 16 Cal.2d 617, 620; *Plummer* v. *Superior Court, supra,* 20 Cal.2d 158, 163.) But if, perchance, the decree were amended by setting forth at length the insurance obligation and thus rendering contempt available, that would not advance respondent's contention to any extent, for a judgment of contempt is not a remedy which plaintiff would possess as a matter of right. ■ She would have to catch Herbert in Illinois and make a personal service of process there, for a foreign judgment for alimony or the like cannot be enforced by a contempt proceeding. (*Smith* v. *Smith,* 115 Cal.App.2d 92, 102 [251 P.2d 720]; *Creager* v. *Superior Court,* 126 Cal.App. 280, 282 [14 P.2d 552].) ■ More importantly, it is true that a contempt proceeding is not a civil action (*Groves* v. *Superior Court,* 62 Cal.App.2d 559, 564 [145 P.2d 355]; *Gale* v. *Tuolumne County Water Co.,* 169 Cal. 46, 51 [145 P. 532]), and it cannot result in a money judgment in favor of the aggrieved party. ■ The right to institute such a proceeding does not start the statute of limitation to running upon an unmatured cause of action.

■ Declaratory relief doubtless would have been available to plaintiff at any time after the first breach of Herbert's obligation, but that type of proceeding does not affect and is not affected by the statute of limitation, except that it is barred when an action for coercive relief with respect to the subject matter is barred, and not before that time. (*Taylor* v. *Marine Cooks & Stewards Assn.,* 117 Cal.App.2d 556, 561 [256 P.2d 595]; *Maguire* v. *Hibernia S. & L. Soc., supra,* 23 Cal.2d 719, 733-734 [146 P.2d 673, 151 A.L.R. 1062]; *Leahey* v. *Department of Water & Power,* 76 Cal.App.2d 281, 286 [173 P.2d 69]; 15 Cal.Jur.2d § 39, p. 168.)

■ This is an action upon the Illinois judgment and

Code of Civil Procedure, section 337.5, subdivision 3, is the applicable limitation statute, prescribing a 10-year period. As above shown, plaintiff had no matured cause of action until Herbert's death. That event occurred on January 29, 1953; she presented a timely claim against the estate which was ultimately rejected and this action was filed on February 16, 1954, less than one year after accrual of her cause of action. The claim of bar by limitation is misplaced.

Conclusion VII of the findings reads: "That plaintiff, Marie Lubin, was guilty of laches in failing to take legal action against said Herbert Lubin prior to January 29, 1953, by reason of which any cause of action which she might have had under or by reason of said Illinois divorce decree of May 6, 1932, is barred."

██ The defense of laches does not lie in a law action (*Hopkins* v. *Hopkins*, 116 Cal.App.2d 174, 177 [253 P.2d 723]; *Brownrigg* v. *deFrees*, 196 Cal. 534, 539 [238 P. 714]), and that is the nature of the case at bar. Respondent says it sounds in equity because of subdivision 3 of the prayer of the complaint, which in its entirety reads as follows: "WHEREFORE PLAINTIFF PRAYS JUDGMENT AND DECREE AGAINST DEFENDANT AS FOLLOWS: 1. In the sum of one hundred fifty thousand dollars ($150,000.00) together with interest thereon. 2. In the sum necessary to provide plaintiff with eight hundred thirty-three dollars and thirty-three cents ($833.33) per month for life. 3. That this court make its judgment and decree in conformity with the decree of the Illinois court, and order the defendant to comply with such terms as this court may see fit and proper to enforce. 4. For reasonable attorneys fees. 5. For costs of suit and for such other relief as to the court seems proper in the premises."

██ Of course, the nature of an action is not determined by the prayer, but by the factual allegations of the body of the complaint. ██ This one alleges the Illinois divorce decree, the making of the property settlement agreement, the fact that it was approved and confirmed and made a part of the decree by reference, the obligation of the husband to provide and maintain the $150,000 of insurance, his failure to pay the premiums or to maintain the policies in force, and resultant damage to plaintiff of $150,000, or "the sum necessary to provide plaintiff with eight hundred thirty-three dollars and thirty-three cents ($833.33) per month for life." Paragraphs 1 and 2 of the prayer square with these allega-

794

tions and with section 1913, Code of Civil Procedure.[3] In this instance plaintiff had no rights before Herbert's death; her cause of action fully accrued upon rejection of her claim against the estate; she is entitled to a money judgment and there is no function for an equity court to perform. This action is strictly at law. That an action upon a judgment of a sister state may be at law, rather than in equity, is recognized in *Bruton* v. *Tearle,* 7 Cal.2d 48, 55 [59 P.2d 953, 106 A.L.R. 580] ; *Creager* v. *Superior Court, supra,* 126 Cal. App. 280; *Handschy* v. *Handschy,* 32 Cal.App.2d 504 [90 P.2d 123]. See also 50 C.J.S. § 870, p. 445. With respect to an action at law upon a domestic judgment, see *Thomas* v. *Thomas,* 14 Cal.2d 355, 360 [94 P.2d 810].

Moreover, the plea of laches is not sustained by the evidence in the instant case. ■ "Laches is not mere delay, but delay that works a disadvantage to another. A person is guilty of laches only where he has, by his conduct or negligence and delay, induced or suffered another to do or abstain from something, whereby the latter might be injured should he be allowed to enforce his rights. (*Taber* v. *Bailey,* 22 Cal. App. 617, 623 [135 P. 975].)" (*Carlson* v. *Lindauer,* 119 Cal.App.2d 292, 309 [259 P.2d 925].) ■ "It is not applied strictly between near relatives [citations] . . . and 'it is not designed to punish a plaintiff' but is 'invoked only where a refusal would be to permit an unwarranted injustice.' [Citations.]" (*Berniker* v. *Berniker,* 30 Cal.2d 439, 448, 449 [182 P.2d 557].)

■ The record discloses that after delivery of the policies to her plaintiff learned prior to July 24, 1933, that Herbert had permitted the policies to lapse. She took no affirmative action until after his death. That she had no right to do so at an earlier date appears from the preceding discussion of the accrual of a cause of action. "A delay in bringing suit will be excused where there exists an actual and substantial impediment thereto. A party cannot be charged with negligent delay in instituting suit so long as his interest is of such a nature that it cannot be enforced by action; so to charge him, his right to sue must be complete; . . ." (30 C.J.S. § 121, p. 544.)

It is also clear that plaintiff's inaction did not induce any change of position on Herbert's part. She and he discussed

---

[3]Code Civ. Proc., § 1913. "The effect of a judicial record of a sister state is the same in this state as in the state where it was made, except that it can only be enforced here by an action or special proceeding. . . ."

the matter many times; he always said he would make it up, take care of it; that she had nothing to worry about; she continued to have confidence in him; believed he would do the proper thing at the proper time. In 1934 or 1935, before he moved to Texas, they were in New York and he offered her certain brewery stock in exchange for a surrender of her rights to the insurance, but she refused the deal. In 1940 her Chicago attorney advised her to sue Herbert because of his breach of the insurance obligation; what sort of suit he contemplated does not appear. She declined to follow this advice for two reasons, (1) she talked to Herbert and he said he would take care of things, and (2) "it was a sensational thing for the boys. I just thought it wouldn't be good for them. I thought Mr. Lubin would live up to his part of the bargain. He was paying the boys' educations, and stuff, you know, and I thought, well, he would live up to his end of the bargain and I would make no trouble." In 1948, after he considered and declared himself uninsurable, Herbert gave evidence that he recognized the insurance obligation as still binding, and Marie definitely showed that she was in the same frame of mind. He proposed to her that she join him in an action to break the Chicago trust and said if they were successful he would see that she got $150,000 cash out of the proceeds in substitution for the insurance. This offer she rejected immediately. The only prejudice to him which is suggested as a result of plaintiff's inaction is his becoming uninsurable prior to 1948. But it cannot be said that any conduct of plaintiff's induced his continued breach of agreement until that time, or that the parties themselves evinced any belief that fact had relieved him of his continuing obligation. The only oral evidence at the trial was that of plaintiff. The rejection of her testimony could not improve defendant's situation, for disbelief does not create affirmative evidence to the contrary of that which is discarded. "The fact that one testified falsely may, and usually does, afford an inference that he or she is concealing the truth but it does not reveal the truth itself or warrant an inference that the truth is the direct converse of the rejected testimony." (*Estate of Bould,* 135 Cal.App.2d 260, 265 [287 P.2d 8, 289 P.2d 15].)

If it be said that Herbert's estate is prejudiced by plaintiff's long delay, the argument is refuted by *Brownrigg* v. *deFrees, supra,* 196 Cal. 534, 539. It there appeared that John M. deFrees, at the time of divorce from his wife, made in lieu of a court order for alimony or child support a written

contract whereby he agreed to pay for the support of plaintiff, his child, the sum of $10 a month, beginning September 1, 1888. The agreement also waived any right to rely on the statute of limitations. He made one payment and no more, dying on September 1, 1918. In due course plaintiff sued on the agreement. Upon the subject of laches the court said, in part, at page 539: "No showing was made that the delay had been productive of any hardship or injustice to the defendant or to the other heirs at law of decedent. If the decedent had complied with his contract and had paid the monthly allowances in accordance with his agreement his estate would have been proportionately reduced. The question of laches is always relative to the circumstances of each particular case. (*Dufour* v. *Weissberger*, 172 Cal. 223 [155 P. 984].) No circumstance, even considered as an equitable question, appears in aid of respondent in this case." That language has obvious pertinence to the situation at bar.

This action is not barred by laches, for this is an action at law wherein the plea does not lie. Secondly, the evidence does not support the finding.

Finally, we must deal with finding XI to the effect that plaintiff "expressly and impliedly consented to and by her conduct acquiesced in the action of said Herbert Lubin in allowing said life insurance policies to lapse"; and conclusion VI that any obligations Herbert may have undertaken to provide and maintain the life insurance policies "were rescinded by the mutual consent of the plaintiff, Marie Lubin, and said Herbert Lubin." Counsel for respondent would support the finding of rescission by the language of cases such as *McCreary* v. *Mercury Lbr. Distributors*, 124 Cal.App. 2d 477, 486 [268 P.2d 762]: "An abandonment of a contract may be implied from the acts of the parties and this may be accomplished by the repudiation of the contract by one of the parties and by the acquiescense of the other party in such repudiation. (*Desser Seed Co.* v. *Garbus*, 66 Cal. App.2d 838, 847 [153 P.2d 184].) It is not necessary that the parties say, in so many words, that they do mutually rescind the contract; rescission may be proved by other words and acts. (*Cincotta* v. *Catania*, 95 Cal.App. 99, 100-101 [272 P. 330].)" It is to be noted that the intent to abandon or rescind must be mutual (Civ. Code, § 1689, subd. 5; 12 Cal.Jur.2d § 191, p. 409.) *Ross* v. *Frank W. Dunne Co.*, 119 Cal.App.2d 690, 699 [260 P.2d 104], holds that the parties terminated their dealings "but respondents did so only be-

cause appellant failed and refused to live up to the agreement. This does not appear to amount to a mutual cancellation, rescission or abandonment.'' The evidence at bar does not sustain any finding of mutual consent to an abandonment or rescission. As above shown, the parties discussed the insurance matter many times over the years; Herbert always said he would take care of it, that she had nothing to worry about; she continued to have confidence in him and believed he would make good on the insurance; she refused to accept certain brewery stock in liquidation of the obligation; also rejected his proposal to wipe it out through a suit against the Chicago Title and Trust Company. The finding of rescission cannot stand.

No other points require discussion.

The court tried the issue of liability first and for that reason excluded evidence as to the measure of plaintiff's recovery. This leaves the reviewing court without a basis for a directed judgment.

The judgment is reversed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied October 29, 1956, and respondent's petition for a hearing by the Supreme Court was denied November 28, 1956. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.