No. 13313

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

LAWRENCE E. O'NEIL, CHARLES H. O'NEIL
and WYNONA M. O'NEIL,

                    Plaintiffs   and Respondents,

    -vs-

JOHN J. LIPINSKI and ANN LIPINSKI,

                    Defendants and Appellants.

---

Appeal from:   District Court of the Eleventh Judicial District,
               Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

    For Appellants:

        Hash, Jellison and O'Brien, Kalispell, Montana
        M. Dean Jellison argued, Kalispell, Montana

    For Respondents:

        Warden, Walterskirchen and Christiansen, Kalispell,
         Montana
        William C. Walterskirchen argued, Kalispell,
         Montana

---

                              Submitted:   May 4, 1977

                              Decided: JUL 14 1977

Filed: JUL 14

---

                         Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by defendants Lipinski from a judgment of the district court, Flathead County, for plaintiffs O'Neil granting specific performance of an agreement to repair an irrigation dam and to replace certain pipe.

Lipinski presents three issues on appeal:

1. Whether specific performance of a contract should be granted where alleged unreasonable delay by plaintiff renders timely performance of this contract impossible and defeats the primary consideration for the contract?

2. Whether plaintiff had an adequate remedy at law?

3. Whether specific performance is an adequate remedy to compel performance of a construction contract?

Plaintiff O'Neil owns agricultural land in Flathead County irrigated by the waters of Ashley Creek. In addition, he owns a water right and a ditch right over and across lands purchased by defendant Lipinski. O'Neil's water is diverted by a concrete dam and concrete pipes over land Lipinski purchased.

Following the purchase of the property by Lipinski a dispute arose between the parties and Lipinski denied O'Neil access to the dam and alleged O'Neil did not own either the water right or the ditch right. O'Neil filed suit in 1968 against Lipinski seeking to establish his water right, ditch right and to recover $7,415.05 for damages caused by Lipinski's denial of water and $5,000.00 punative damages. That case was settled on the day set for trial. Stipulated findings of facts and conclusions of law were entered and signed by all parties and a judgment entered. At the same time, June 16, 1969, the memorandum agreement involved in the instant case was entered into between the parties.

- 2 -

That agreement, among other things, settled O'Neil's claim for damages against Lipinski and set up the method and manner of repairing the dam and the distribution lines. It provided O'Neil was to see and approve the plans and specifications, and the project was to be completed by December 10, 1969. On November 21, 1969, Lipinski discharged his counsel and obtained new counsel who advised O'Neil that Lipinski refused to comply with the agreement.

The court found according to the agreement that (1) Lipinski desired to have all of the pipeline underground, (2) Lipinski was to have full control and supervision of the repair project, subject to O'Neil's approval of the plans and specifications, (3) on June 16, 1969 Lipinski employed an engineering firm to draw up such plans but the firm failed to do so, (4) on August 15, 1969 another engineer was employed who submitted plans and specifications to O'Neil's attorney on August 26, 1969, (5) these were submitted to O'Neil's engineer on or about September 19, 1969, and after a conference certain changes were proposed, and (6) that these changes were incorporated into the plans by Lipinski's engineer and resubmitted to O'Neil who requested nine further changes. On November 21, 1969, Lipinski discharged his attorney and engineer and terminated the agreement.

The court further found the nine changes were all in accord with accepted engineering practices, save and except the requiring of a lowering of the intake entry 12 inches below the spillway slab and the requirement of 12 rather than 6 inches of fill. These latter two requirements were found to be substantial and unreasonable but the other 7 were reasonable. In addition, the court found that had the work been done in 1969, the cost would have been approximately $9,000 and at the time of this trial in

1975, the cost had increased to $19,710.00. The trial court found a breach of the agreement by Lipinski and ordered the repairs be made, excepting the two above referred to exceptions by December 1, 1976. Lipinski appeals from that judgment.

During the period from December 1969 to the trial on December 26, 1975, certain negotiations took place between counsel and on September 20, 1974, by agreement of the parties, the court appointed Douglas Daniels as a special master and he submitted a report to the court and testified at the trial.

Issue 1. We note appellant argues that he was excused from performing because delays by respondent prevented work completion by December 10, 1969. We find no merit to this argument. The settlement agreement was signed on June 16, no engineer was hired by appellant until August 15; the revised plan of appellant's engineer Marquardt was not given to respondent until October 15 and that plan was not in accord with accepted engineering practices. Respondent's engineer Wiedenman had his revised plan before appellant by October 28, but he did not respond until November 21 when his new attorney notified respondent the agreement would not be performed. We note Marquardt testified if his Plan B, dated October 15, had been immediately approved he could not have met the December 10 deadline. Obviously, the recommended changes of Wiedenman would have extended that date. Marquardt was notified by appellant to cease work on November 6. The record speaks for itself. If anyone is to be charged with delay, it is appellant not respondent. Lipinski at trial on cross-examination revealed his real reason when he said: "* * * in hindsight that was a poor decision because I wouldn't do it today, make that agreement * * *."

- 4 -

Issue 2. Did respondent have an adequate remedy at law and therefore is not entitled to equitable relief? Appellant argues that respondent's legal remedy is of such a character as to preclude relief by way of specific performance. In support he cites Philbrick v. American Bank and Trust Co., 58 Mont. 376, 193 P. 59; Jeffries Coal Co. v. Industrial Acc.Board 126 Mont. 411, 252 P.2d 1046, but these cases are not applicable factually. He argues he wrote respondent a letter authorizing him to proceed with the work and that the costs of doing/the work would be the same if one or the other did it.

However, as noted in 71 Am.Jur.2d, Specific Performance §9:

"* * * It is clear, however, that the mere fact that a party can avail himself of some relief at law does not preclude or defeat the jurisdiction of equity to decree specific performance. * * *"

Such is the case here where the trial court found respondent had no plain, speedy or adequate remedy at law. This is the second law suit over the water and ditch rights and some 8 years have passed to the detriment of respondent. The court here was confronted with a multiplicity of suits, the fact situation is unique,so the court properly exercised its equitable powers. In the settlement agreement of 1969 Lipinski insisted on having absolute control and management of the repairs and installation because it was on his property. In the years leading up to 1969, he had threatened to restrain O'Neil from coming onto his property to make repairs and had ordered workmen off the property. The trial court granted his demands in the 1969 agreement and in its efforts to avoid continued litigation the court had authority to grant the equitable relief here. We find no error.

Issue 3. The final issue questions whether specific performance is an available remedy to enforce a construction contract. To support his position appellant cites Lubin v. Lubin, 144 C.A.2d 781, 302 P.2d 49 and Moklofsky v. Moklofsky, 79 C.A.2d 259, 179 P.2d 628. These cases are not on point and can be distinguished. Lubin is a property settlement in a divorce action and has nothing to do with a construction contract. Moklofsky deals with an agreement to construct an outside staircase, but this was not the controlling issue in the case.

Here, the court did not grant specific performance nor did the complaint ask for it. The court ordered Lipinski to repair and replace the dam and pipeline in accord with the plans or in the alternative, if he failed to do so within a specific time, O'Neil could do the work under the supervision of an engineer appointed by the court and he would have judgment for the costs.

Contrary to Lipinski's position, the court could have ordered full and complete specific performance of the construction contract. While there are diverse views on the specific performance of construction contracts, we find and adopt the position taken by the Massachusetts Court in Jones v. Parker, 163 Mass. 564, 40 N.E. 1044,1045, where Mr. Justice Holmes stated:

"There is no universal rule that courts of equity
never will enforce a contract which requires some
building to be done. They have enforced such con-
tracts from the earliest days to the present time."

That view was adopted in a more recent case, Grayson-Robinson Stores, Inc. v. Iris Const. Corp., 8 N.Y.2d 133, 202 N.Y.Supp.2d 303, 168 N.E.2d 377,379. There the court in reviewing the problem of specific performance of construction contracts said:

"There is of course, an old tradition or
approach according to which courts have been
reluctant to enforce 'Contracts which require the
performance of varied and continuous acts, or the
exercise of special skill, taste, and judgment'
because 'the execution of the decree would require
such constant superintendence as to make judicial
control a matter of extreme difficulty'. Standard
Fashion Co. v. Siegel-Cooper Co., 157 N.Y. 60,66,
51 N.E. 408,409, 43 L.R.A. 854. In some instances
courts of equity in other States have for some such
reasons refused to order specific performance of
building contracts. [Citing cases] Other courts of
equity have gone the other way (see Jones v. Parker,
163 Mass. 564, 40 N.E. 1044, which also was a contract
to build for a lessee). 'There is no universal rule
that courts of equity never will enforce a contract
which requires some building to be done. They have
enforced such contracts from the earliest days to the
present time' (Jones v. Parker, supra, 163 Mass. at
page 567, 40 N.E. at page 1045). On varying facts our
New York decisions take one or the other position.
[Citing cases]. Modern writers think that the 'diffi-
culty of enforcement' idea is exaggerated and that the
trend is toward specific performance (5 Corbin, Contracts
[1951 ed.], § 1172; 5 Williston, Contracts [rev.ed.],
p. 3977; Restatement, Contracts, § 371, comment a).
Clearly there is no binding rule that deprives equity
of jurisdiction to order specific performance of a
building contract. At most there is discretion in the
court to refuse such a decree. And here we do not
even have an equity suit but a motion made as of right
to confirm a completely valid arbitration award con-
forming in all respects to the express conferral of
authority on the arbitrators and meeting all statutory
requirements for confirmation * * *."

While not raised as an issue on appeal the splitting of the

costs over $9,000 was clearly error in view of the record and

must be reversed. The trial court in its conclusion of law No. 7

found Lipinski should pay the first $9,000 and that thereafter the

two parties would share all expenses over and above that figure.

We find the court erred in this holding and direct all costs be

paid by appellant in the construction and installation of the

irrigation system as proposed by the Marquardt plans and specifi-

cations, incorporating in same the recommended changes of Wiedenman

as referred to in the findings of fact and conclusions of law

of the trial court. To hold otherwise would be to penalize respon-

dent O'Neil who did what he could to get the 1969 agreement carried out in 1969. He has been deprived of the use of his water for over 8 years, due to litigation and obstinance of appellant Lipinski.

The judgment of the trial court is affirmed and the cause remanded to the trial court with directions to correct its conclusion of law No. 7 in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.